HOLLAND *et ux. v.* HENSLEY *et al.*

A voluntary agreement, without any valuable consideration, cannot be enforced against the heirs of the party making the agreement.

If a contract, by which a trust is created, is complete and executed, it will not be disturbed for want of a consideration; but courts of equity will not carry into effect a mere voluntary agreement, contract, or covenant, to transfer property.

The want of a consideration, is universally a good defence to a bill for rectifying a voluntary conveyance, or enforcing a voluntary agreement.

The meritorious consideration of providing for a child, has always been held sufficient to authorize the enforcement of an executory contract against the party contracting; but where the contest is between one child and other children of the same ancestor, the meritorious consideration operates on both sides, and being equally balanced, equity will not interfere, or lend its aid.

A party claiming a conveyance of real estate, who does not allege, and cannot prove, that the land was purchased with his money, cannot be permitted to show, by parol evidence, that the purchase was made for his benefit, or on his account.

The title to a land warrant will not pass by delivery, without assignment.

No evidence of any contract for the creation or transfer of any interest in real estate, is competent, unless it be in writing, and signed by the party sought to be charged, or his agent.

Holland et ux. v. Hensley et al.

*Appeal from the Polk District Court.*

THE complainants ask, that the defendants be decreed to convey to them all their right, title, and interest, in certain lands in Polk county, Iowa, and aver, that Isaac Ash, the father of the complainant Eveline, and of the defendants, purchased two land warrants for the said Eveline, at the price of $220, which were intended by him, and were received by her, as an advancement; that the parties were at the time, to wit: the spring of 1849, living in the state of Indiana, and in consequence of receiving said land warrants, they removed to the state of Iowa, where, in the same year, they located the land, according to agreement, in the name of said Isaac Ash. They aver, that they were at an expense of $100 in locating the land warrants; that the said Isaac Ash died without having conveyed the land purchased with said warrants to said Eveline; that his widow, since his death, has conveyed her interest to complainants; and that the defendants, the heirs of said Ash, refuse to convey. The complainants ask a decree against them, and for general relief.

The defendants answer, and deny the purchase of the land warrants for the said Eveline, or that they were intended as an advancement to her. They deny that the complainants were induced to remove to Iowa by receiving the land warrants, and that they were located by them at the expense of $100, as charged. They aver, that complainants had previously bought land in Iowa, and had intended to remove to the state; that they had received already large advancements from the said Isaac Ash, the father, and that complainant Granville Holland was largely indebted to his estate, for money paid as surety for said Holland. The defendants also claim that the property in the land warrants could not pass by delivery, but must have been assigned in writing, and rest, as a defence, upon the statute of frauds.

The testimony in the case shows, that in 1848, complainants were living in Indiana; that Granville Holland had

failed in business, and that Isaac Ash, his father-in-law, aware that he was engaged in no business, was anxious that he should remove to Iowa, and as an inducement for him to do so, promised to assist him pecuniarily; that Holland paid a visit to Iowa, liked the country, and determined to remove to the state; that Ash purchased two government land warrants, for one hundred and sixty acres of land each, with a view of having them located in Iowa, the land to be for the benefit of Mrs. Holland and her children. He stated to different persons, and at different times, that he had purchased the land warrants and given them to his daughter Eveline; that the land was to be located in his own name, on account of the embarrassment of Granville Holland, her husband; that it was intended as an advancement to Mrs. Holland, from his estate, for her benefit, and that of her children, in order that they might have a home. After the warrants had been located on the land in controversy, he said to others, that he never expected to live on it; that it was designed for Mrs. Holland and her children, and he intended giving it to them; that he designed giving to each of his other children a like amount, in like manner, except that the title to the land in the case of Mrs. Holland, he would keep in his own name, so that it might be secured to her and her children, from the creditors of her husband. The complainants removed to Iowa in 1849, and brought with them the land warrants received by them from Isaac Ash, which were located by Holland, on the lands now in controversy, in Ash's name. It is not shown that the complainants ever resided on the land, or that there was any improvement on it. Holland claimed to have it in possession from 1849, but not by any visible or actual occupancy. The expense of a journey from Indiana to Iowa, in order to locate the land warrants, it is shown, would have been about sixty dollars.

By the defendants, it is shown, that Ash, at his death, in 1851, left five heirs; that before his death, Holland and wife had received an advancement from his estate, to the amount of eight hundred dollars; that when complainants

left Indiana, Ash had to pay for him about nine hundred dollars, borrowed money, for which he was surety; that Holland had never paid taxes on the land; and that to persons visiting the country from Indiana, he had pointed it out as the land he had located for Isaac Ash, with the land warrants. It further appears, that in 1852, after the death of Isaac Ash, the complainants conveyed to a trustee, for the benefit of Holland's creditors, all their interest in certain property which was of the estate of Isaac Ash, deceased, at the time of his death. Whether it embraced their interest in the whole estate does not appear, but it included the personal estate and the land in controversy.

The District Court, at the hearing, found the facts alleged in the complainants' petition to be true, and that they were entitled to a conveyance from the heirs of Ash. A decree to that effect was rendered accordingly, from which decree defendants appeal.

*Barlow Granger*, for the appellants.

*Curtis Bates*, for the appellees.

STOCKTON, J.—The complainants claim: 1. That the land warrants were intended by Isaac Ash as an advancement to his daughter, the complainant Eveline, and that the property in them passed to her by delivery, without assignment. 2. That the purchase of the lands with the warrants, in the name of Ash, raised a resulting trust in favor of complainants, which the other heirs of Ash are, in equity, bound to carry out, by the conveyance of the land to complainants. We think that these conclusions are not warranted, either by the facts or the law.

In the first place, there is no sufficient evidence that Isaac Ash intended to vest in his daughter, Mrs. Holland, the property in the land warrants. We recur to portions of the testimony: One of the witnesses, Talbot, testifies that Ash said, that "the land warrants were for the use and benefit of Eveline and Granville Holland, and were intended as a

gift." Preston, another witness, says, that Ash told him "he designed the lands in Iowa, entered by Holland, for the benefit of Holland and his family; that they were a gift, and that he had given Holland the warrants, who located them in Ash's name." Another witness, Eckels, says that Ash told him "he had caused some land warrants to be located in his own name, which he intended as an advancement for the benefit of his daughter, Eveline Holland; that he intended to give to each of his other children in like manner, or equal amount, except as to the title in the case of Mrs. Holland, which he intended to keep in his own name, so as to secure it to her and her children." To the same purport is the other testimony. It would be difficult to misapprehend the object of Ash, the father. His intention was freely announced to many of his friends. He did not design to give the property in the land warrants to complainants. He did not wish that the land, which was to be procured with them, should be in their name. He intended that everything should be in his own name, for the use and benefit of his daughter and her family. He wished to secure it to them; and there was neither word nor deed from which we are authorized to infer, that he transferred the property in the land warrants to complainants, or intended to give them the control thereof. The words "gift and advancement," used by him, are quite consistent with his declared intention to keep the title in himself, and to confer upon them only the use. Nor does it appear to us satisfactorily, that the title in the land warrants passed by delivery. The laws provide for their transfer by assignment. But complainants have not offered to show that they were assigned, in blank or otherwise, so as to vest the title in themselves. What is conclusive in our view of the matter, is, that the evidence shows that Ash intended, all the time, that the title of the land purchased with the land warrants, should be in his own name. The second proposition of complainants fails, of course, from their failure to establish the first. Unless the property in the land warrants vested in them, there was no resulting trust. They must have paid to the United States the con-

sideration for the land, before there is any trust of the legal estate in Ash or his heirs, for their use or benefit. Story's Eq. Jurisprudence, § 1201. We have carefully looked through the pleadings and the testimony, to ascertain if there is anything therein upon which the decree of the District Court can be sustained. We have found nothing. The intention of Isaac Ash, as declared by him, at the time of the removal of complainants to Iowa, in very plain and unmistakable terms, is clearly shown. It is the misfortune of complainants, that such intention was only declared by words, and seems at no time to have been evidenced by any writing. As he made no will, and placed on record no declaration of the trust, we are left to presume that, before his death he changed his intention, and suffered the land purchased with the warrants to descend to his heirs with the residue of his estate. We are fortified in this conclusion by the fact that the complainants, after their removal to the state, did not settle upon or improve the land, but had made their home elsewhere.

The other reasons urged by defendants, against the relief sought by complainants, are, in our opinion, equally cogent and conclusive, and will be only briefly noticed:

1. The agreement of Isaac Ash was by parol only, and no evidence of any contract for the creation or transfer of any interest in lands, is competent, unless it be in writing, signed by the party or his agent. Code, § 2410.

2. It was a voluntary agreement, without any valuable consideration, and as such, cannot be enforced by complainants against the heirs of Isaac Ash.

We think, that on either of these grounds, the defendants are entitled to have the decree of the District Court reversed. The consideration money for the land, was paid by Isaac Ash. He bought and paid for the land warrants, and purchased the land with them, taking the title in his own name. To suffer the complainants to show by parol, that the land was a gift to them or that it was purchased by Ash, with his money, for their use, would be to overturn the statute of frauds. *Bottsford* v. *Burr*, 2 *John. Ch.* 407; *Blair* v. *Bass*,

4 Blackford, 545. If complainants had purchased the land with their own money, or land warrants, and had taken the title in the name of Ash, a trust would have resulted to them, because of the payment of the purchase money; and defendants would have been required to convey to them. *Boyd* v. *McLean*, 1 John. Ch. 582. As they did not pay the purchase money, they cannot be permitted to show by parol proof, that the purchase was made for their benefit, or on their account. *Bottsford* v. *Burr*, *supra*; Code, §§ 2409, 2410.

The second objection is equally forcible. The declaration of Isaac Ash, that he held the title of the land for the use and benefit of complainants, was a mere voluntary agreement, without any valuable consideration, and incapable of being enforced against the defendants. If the contract by which the trust is created, is complete and executed, it will not be disturbed for want of consideration. But courts of equity will not carry into effect a mere voluntary agreement, contract, or covenant to transfer property. *Minturn* v. *Seymour*, 4 John. Ch. 498; *McIntire* v. *Hughes*, 4 Bibb, 186. The want of a consideration, is universally a good defence to a bill for rectifying a voluntary conveyance, or enforcing a voluntary agreement. *Dawson* v. *Dawson*, 1 Devereux Eq. 93, 99; *Banks* v. *May's Heirs*, 3 Marshall, 435; *Bibb* v. *Smith*, 1 Dana, 580. The meritorious consideration of providing for a child, has always been held sufficient to authorize the enforcement of an executory contract against the party contracting. But where the contest is between one child and other children of the same ancestor, the meritorious consideration operates on both sides, and being equally balanced, equity will not interfere or lend its aid. Leading Cases in Equity, 217, citing *Ellis* v. *Nimmo*, Loyd & Goold, 333; *Jeffreys* v. *Jeffreys*, 1 Craig & Phillips, 138.

We deem it unnecessary to dwell at length, upon other facts which are entitled to their due and proper weight in the decision of this case. Without mentioning others, we only advert to the fact, that the complainants have united in conveying to a trustee for the benefit of the creditors of

Holland et ux. v. Hensley et al.

Granville Holland, all their interest in certain town lots in Greencastle, Indiana, and in the land in controversy, as part of the estate of Isaac Ash, deceased. This suit is therefore carried on for the benefit of these creditors. If the land is decreed to complainants, it will go, not to fulfill the purpose for which the evidence shows it was at one time designed by Isaac Ash, viz: to furnish a home for his daughter and her children, that would be assured to them beyond the reach of chance or casualty; but, as if to thwart that very purpose, it will go to satisfy the ever craving and remorseless creditor. And while we would not wish to be understood, as hesitating to award complete justice to complainants, for the reason that they have been willing to suffer the patrimonial estate of Eveline Holland, to be swallowed up by the claims of the creditors of the husband, yet when it is shown, that the effort now made to establish a resulting trust upon the parol declarations of the ancestor, is to be the means of enabling these creditors to defeat the repeatedly expressed intentions of Isaac Ash, as to the disposition of property intended by him for the sole use of his daughter and her children, the discretionary power of this court, will not be exercised to aid in the accomplishment of any such end.

Nor does it seem to us, that complainants, at the time of the execution of the deed of trust to Cowgill, claimed the exclusive ownership of these lands. The conveyance to the trustee, as we understand the testimony, was of their right in and to the lands, as part of the estate of Isaac Ash. Such recognition by them of the lands as part of his estate, is inconsistent with the claim of exclusive ownership, now set up by them. Indeed, this claim of exclusive ownership, by virtue of a resulting trust, seems to us clearly to have been an after-thought. The complainant's bill should be dismissed.

Decree reversed.