## GAMMON & DEERING v. KENTNER ET AL.

1. **Payment:** PROMISSORY NOTES: EVIDENCE CONSIDERED. Evidence considered and held to show that a certain transaction was a payment of notes, and not a purchase.

*Appeal from Tama District Court.*

THURSDAY, MARCH 24.

THIS action is brought to recover the amount of two promissory notes executed by C. H. Kentner, and to foreclose a mortgage made to secure them. The defendants admit the execution of the notes and mortgage, but allege that the notes have been paid. The cause was tried to the court, and the

plaintiffs' petition was dismissed.    The plaintiffs appeal.
The facts are stated in the opinion.

*W. H. Stevens* and *H. C. Henderson*, for appellants.

*O. H. Mills* and *C. B. Bradshaw*, for appellees.

DAY, J.—There is no controversy as to the following facts:
On the 15th day of August, 1873, C. H. Kentner executed to
Carmichael, Brooks & Co. five promissory notes, each for the
sum of $1,124, payable on the first day of September, 1874,
and yearly thereafter.    To secure these promisssory notes C.
H. Kentner and his wife executed to Carmichael, Brooks &
Co. a mortgage upon property known as the Kentner eleva-
tor.    On the 8th day of September, 1874, M. C. Murdough
indorsed and guaranteed to Carmichael, Brooks & Co. farmers'
notes to the full amount of the two Kentner notes first matur-
ing, being the notes now in suit, and procured from them
said notes, with their indorsement thereon, "without re-
course."    On the 3d day of November, 1876, C. H. Kentner
executed to L. Carmichael & Co., successors to Carmichael,
Brooks & Co., five promissory notes, each for the sum of
$674.40, payable respectively on the first day of November,
1877, and yearly thereafter.    These notes were executed to
cover a balance of the money due on the last three of the
notes above referred to.    To secure these notes C. H. Kentner
and wife executed to L. Carmichael & Co. a mortgage upon
the whole of the elevator property aforesaid.    On the 4th day
of November, 1876, Carmichael, Brooks & Co. entered upon
the record a release of the mortgage first above described.
On the 7th day of August, 1877, M. C. Murdough turned
over the two notes held by him to the plaintiffs, upon a col-
lection which they held against him.    On the 6th day of
February, 1878, L. Carmichael & Co. commenced an action
against Kentner and wife to foreclose the mortgage last above
mentioned.    A decree of foreclosure was obtained, and the
mortgaged property was sold under special execution to L.

Carmichael & Co.  Neither M. C. Murdough nor Gammon & Deering were made parties to this foreclosure proceeding. On the 1st day of September, 1877, the plaintiffs commenced this action upon the two notes held by them, and to foreclose the mortgage executed for their security.  The only material question in the case respecting which there is any controversy is as to the circumstances under which M. C. Murdough obtained the two notes in controversy.  C. H. Kentner testifies that he sold M. C. Murdough a half interest in the elevator for $3,500, and that Murdough was to take up these two notes as the first payment on the elevator, and pay the remaining $1,000 on the first day of January, 1875; that they operated the elevator together for about two months and ten days, until the 15th of November, 1874, when they looked over the books and found there was a little money lost, and Murdough was very mad about it, and said he would have nothing more to do with it.  Upon the other hand Murdough testifies that he bought the notes in controversy at the request of Kentner, for the purpose of assisting him and preventing a foreclosure of the mortgage, before there was a word said about his buying the elevator, that a month after he bought the notes they made a trade about the elevator, and that he never commenced business with Kentner, but simply put grain in his elevator.  The testimony of Murdough is without corroboration.

George E. Maxwell, a member of the firm of Carmichael, Brooks & Co., and of L. Carmichael & Co., testifies as follows: " In the first place Mr. Murdough suggested to me in regard to his buying the undivided one-half of what is known as the Kentner elevator, and asked what I thought of the arrangement.  After that Mr. Kentner came to me and said that he had an opportunity to sell an undivided half of the elevator to Mr. Murdough, provided I would take farmers' notes in payment for about $2,500, or for payment to the amount of the first two notes under the mortgage of Kentner to Carmichael Brooks & Co., and stated that if we would take the

notes in payment of his that he could trade. I replied to him I would see about it. After that I saw Mr. Carmichael and submitted the proposition to him, and he thought favorably of it. After that I think I saw Mr. Kentner first, and I told him I thought we could make the arrangement of that kind, and in a few days Mr. Murdough sent for me to come to his store, and I went there, and he made the same proposition to me that Mr. Kentner had. He told me he would buy the undivided half of the elevator, provided he could pay in the farmers' notes, and wanted to know if we would take the notes. I told him we would if we considered them good. A batch of notes was selected, and we agreed to take them in payment of the Kentner notes. In the meantime he requested that one-half of the elevator should be released from mortgage. I told him I would see about that. I saw Mr. Carmichael in regard to that, and he objected to releasing the mortgage, if they could make the trade without that it could be done, that is, we would take the farmers' notes. Murdough turned out farmers' notes to the amount of $2,488.54, the amount of the Kentner notes. I delivered the Kentner notes to Mr. Spafford, who was then in the employ of Murdough. Mr. Spafford said that he wished the notes, he desired to take the notes as they were, to show that he had paid Mr. Kentner, or paid us so much money for Mr. Kentner, upon the contract. I do not remember positively whether this indorsement was made at Mr. Spafford's request, or on my own motion. I did nothing further with Mr. Murdough about these notes. Mr. Murdough and Mr. Kentner both told me after this that they were in the wheat business."

J. B. Spafford testified as follows: "I resided in Tama City, Iowa, in September, 1874, and was in the employ of M. C. Murdough. I have no recollection of any conversation with M. C. Murdough about his buying an interest in the elevator of Mr. Kentner. I learned from him that he had or was intending to buy a half interest in it. I knew nothing about the terms of the purchase. I understood he was to pay

$3,500. I know how he was to pay a part of it; he was to pay it by taking up a couple of notes that Carmichael, Brooks & Co.'s bank held against Kentner. He took these notes up by giving other notes in exchange. At Murdough's request I took the notes to the bank, and exchanged them for the notes in suit. Mr. Maxwell took the notes I took down, and Maxwell was going to cancel the notes in suit, and I objected to it. I told him I did not think it was business to cancel them, I thought it would be better for Murdough not to have them canceled. I thought Mr. Murdough had no deed for his share of the elevator, and he wanted something to show for what he was paying out. The indorsement was made at my request. He indorsed the taking of the notes by me that way. I was working in his employ. I do not remember of his giving me any specifications as to whether I should take the notes up canceled or uncanceled. The indorsement was my own motion. Maxwell proposed to cancel them and I objected."

This testimony very strongly corroborates the testimony of Kentner. We feel satisfied from the whole testimony that Murdough contracted for the purchase of a half interest in the elevator, and that he took up the two notes in question pursuant to his contract as part payment of the purchase-price of the elevator, and that the idea of treating the arrangement as a purchase of the notes and of enforcing the mortgage is a mere afterthought, arising from the fact that the transaction proved less profitable than was anticipated. The notes in question were satisfied by payment pursuant to the contract between Murdough and Kentner, and the fact that they were indorsed instead of being canceled cannot operate to continue them and the mortgage in force. "A mortgage after payment becomes *functus officio*, and neither the mortgagee nor any one else has, as a general rule, any power to transfer it as a subsisting security, or to revive it to secure the same or any other liability." 2 Jones on Mortgages, § 943. See also 1 Jones on Mortgages, § § 855, 858, 864; *Brown v.*

*Lapham*, 3 Cush., 551; *Wadswoelt v. Williams*, 100 Mass., 126. It is claimed by the plaintiffs that Murdough has not obtained 'a deed for the elevator. But he has not performed, or offered to perform, his part of the contract, by payment or tender of the balance of the purchase-money, and has never been entitled to a deed. It is further said that Kentner has never been able to execute a conveyance free from incumbrance. Murdough knew the situation of the title at the time of his contract, and it does not appear that he intended or expected the incumbrance to be removed, until it matured. It is further said that the subsequent execution of a mortgage upon the property and the sale thereunder operated to rescind the contract. But they could not operate to restore notes and a mortgage before that time paid off and discharged. We are of opinion that the judgment of the court below is correct.

AFFIRMED.