## PATTERSON, GUARDIAN, v. MILLS.

1. **Consideration:** ADVANCEMENT TO CHILD. An advancement by a parent to a child is a good consideration, and will support a contract or conveyance, except as against other children, creditors, or subsequent purchasers without notice;—following cases cited in opinion.

2. **Trust:** DECLARATION OF BY PAROL. While declarations of trusts in regard to real estate must be executed in writing, (Code, § 1934,) the

rule does not apply where the subject of the trust is a debt secured by mortgage, and not the land mortgaged.

3. **Will**: TESTAMENTARY ACT: WHAT IS NOT. The execution and delivery of a mortgage by a parent to another person, with directions to the mortgagee to assign it to the mortgagor's son after his death, *is not a testamentary act, whose validity is to be determined by the laws in relation to wills.*

4. **Husband and Wife**: ANTE-NUPTIAL CONTRACTS NOT AFFECTED. A wife cannot, on account of the marriage relation, set aside and overthrow the valid contracts and conveyances made by her husband before marriage.

5. **Mortgage**: UNITED WITH LEGAL TITLE: MERGER. Where a mortgagee acquires the legal title to the mortgaged land, the mortgage will not merge in the title when it is his intention that it shall not so merge; and, in the absence of evidence of his intention, it will be presumed to accord with his interest;—following cases cited in opinion. And the same rule obtains where the holder of the legal title subsequently acquires the mortgage.

*Appeal from Hamilton District Court.*

SATURDAY, APRIL 23, 1886.

ACTION in chancery to foreclose a mortgage. Upon a trial on the merits there was a decree for defendant. Plaintiff appeals.

*Wesley Martin* with *C. T. Collier*, for appellant.

*W. J. Covil*, for appellee.

BECK, J.—I. The facts disclosed by the evidence, as we find them, are these: In December, 1875, Samuel Mills executed a mortgage to Nathaniel Green, conveying a quarter section of land in Webster county to secure the payment of $2,600. The mortgage was filed for record May 26, 1876. June 21, 1883, Green assigned and transferred the mortgage to the plaintiff as the guardian of Clement E. Mills, the son of Samuel Mills, who died before this assignment. The mortgage was executed under the following circumstances, and for the purposes hereafter stated. Samuel Mills had

been divorced from his wife, the mother of his son Clement, and she had been allowed $1,000 alimony to be paid by him. It was the desire of both that the sum set apart to her as alimony should go to their son. In pursuance of such intention, and for the purpose of securing to the son the $1,000 alimony allowed to the mother, and a further sum to be advanced by the father, he executed the mortgage in suit to Green, with the express oral agreement and understanding that, at the death of the father, the mortgage should be transferred to the son. After the death of the father, Green transferred and assigned the mortgage to plaintiff as guardian of the son Clement. Subsequently to the execution of the mortgage, Samuel Mills intermarried with defendant, and afterwards, in consideration of $3,200 paid by her, he conveyed the land by quitclaim deed to his second wife, the defendant. There were two mortgages of $400 each upon the land when Samuel Mills acquired title thereto, which were executed by those under whom he acquired title. These were assigned to defendant about the time of the death of Samuel, she paying the mortgagees the amount due on the mortgages. The defendant in her answer and cross-bill, by way of defense, alleges that the mortgage was given without consideration; that it was delivered to Green with the understanding that it should be surrendered and discharged of record upon the request of the mortgagor; that it was only held in trust for him; and that no note or other writing for the amount secured by the mortgage was executed by Mills. Defendant prays that the mortgage be canceled and set aside, but, if this is not done that the other mortgages be foreclosed, and enforced as prior liens upon the land.

II. The mortgage executed by Mills to Green upon its face is evidence of an indebtedness from the mortgagor to the mortgagee. It imports a consideration. But the evidence shows an actual and lawful consideration of $1,000, the amount awarded as alimony to Clement's mother, which, under the arrangement of the father

1. CONSIDER-ATION: advancement to child.

and mother, was to go to the son; and it is further shown by the evidence that the balance of the consideration, $1,600, was an amount which the mortgagor secured by the mortgage as an advancement to his son. But an advancement by a parent to a child is a good consideration, and will support a contract or conveyance, except as against other children, and against creditors and subsequent purchasers without notice. See *Holland v. Hensley*, 4 Iowa, 222; *Mercer v. Mercer*, 29 Id., 557; *Cecil v. Beaver*, 28 Id., 241.

III. Defendant's counsel insists that the mortgage to Green, with the agreement that he should assign it to the son, 2. TRUST: declaration of by parol. created an express trust; and that, as this trust is not evidenced by writing, it must fail under our statute of frauds. This statute (Code, § 1934) provides that " declarations or creations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance, but this provision does not apply to trusts resulting from the operation or construction of law." Let us inquire what is the subject of the trust in question. Mills made himself a debtor to Green by the mortgage. It is obvious that this debt secured by the mortgage, and not the land mortgaged, was the subject of the trust. Green was to assign the mortgage, upon the death of Mills, to the son of the latter. That assignment was intended to transfer the debt, and of course with it the lien created by the mortgage. It is very plain that the trust had relation alone to the debt, and not to the real estate upon which the debt was made a lien by the mortgagor. The trust relating to a chose in action, and not to real estate, is not within the purview of the statute of frauds. See Perry, Trusts, § 86. The contract creating the debt, the mortgage, was made for Clement's benefit. He may sue thereon in his own name without joining Green. Code, § 2543. His rights under the mortgage could have been enforced without the assignment by Green.

IV. Counsel for defendant insist that the execution of the mortgage was a testamentary act,—a promise to make a

**3. WILL: testamentary act: what is not.** gift after the mortgagor's death,—and is therefore void. But counsel's position finds no support in the facts. The mortgage is absolute in its provision, and the amount secured falls due in three annual payments, with seven per cent per annum interest. The understanding that the mortgage should be assigned at the death of the mortgagor was oral. The transaction is not testamentary in its character.

V. There is a claim urged that the mortgage was made to defraud creditors. But the evidence is not to that effect. It does not appear that when the mortgage was made Mills was indebted to persons who would be defrauded by the mortgage, and no creditors is complaining of it now.

VI. The mortgage was executed and recorded before the marriage of Mills with the plaintiff. She is chargeable with **4. HUSBAND and wife: ante-nuptial contracts not affected.** notice thereof by its registry. There is no rule of law that will give her rights and remedies against plaintiff which would not be held and enforced by other persons. She cannot, on account of the marriage relation, set aside and overthrow the husband's contracts and conveyances which were made before marriage, and that the mortgage was valid before the marriage there can be no doubt.

VII. In our opinion, the defendant is entitled to enforce the mortgages upon the land executed prior to the mortgage **5. MORTGAGE: united with legal title: merger.** in suit and assigned to her. It does not appear that in the acquisition of the mortgages she intended to cancel them, or intended that the mortgages should merge in the legal title. This court has held that, where a mortgagee acquires the legal title of the land, the mortgage will not merge in the title when it is his intention that it shall not so merge, and, in the absence of evidence of intention, it will be presumed to accord with his interest. See *Woodward v. Davis*, 53 Iowa, 694; *First National Bank of Waterloo v. Elmore*, 52 Id., 541. The same rule applies to this case. Defendant stands in the

shoes of the mortgagor, for she holds the mortgages under them. It is, then, the case of the holder of the legal title acquiring the mortgage, and not, as in the foregoing cases, the acquisition of the legal title by the holder of the mortgages. But the principle applies equally to each class of cases, for the rights of the mortgagee are the same in both. He ought to be permitted in the one, as well as the other, to hold the title and mortgage free of merger. There is no evidence tending to show that defendant intended the mortgage to merge in the title, and it readily appears that merger would be against her interest. We are therefore required to hold that it was not intended. Defendant, then, holds her mortgages as valid prior liens to plaintiff's mortgage, and her rights thereunder ought to be enforced.

A decree will be entered in the district court, or, at plaintiff's option, in this court, foreclosing plaintiff's and defendant's two mortgages, which shall declare defendant's mortgages to be the paramount and prior liens on the land, to be first paid upon the sale thereof, and whatever remains of the proceeds of the sale after paying the mortgages shall be paid upon plaintiff's mortgage.

REVERSED.