H. E. PORTER, Appellant, v. THE FARMERS AND MER-
CHANTS SAVINGS BANK OF LONE TREE, IOWA, Appel-
lee.

**Mortgages:** CONVEYANCE OF PROPERTY TO MORTGAGEE: PAYMENT AND
RECONVEYANCE: EVIDENCE. In this action to compel the reconveyance
of property transferred to the mortgagee, the evidence is held to
show that the cashier of the defendant bank had authority to settle
with plaintiff, by taking title to the property and agreeing to re-
convey it upon payment of the debt at any time within one year,
and that he did so agree for the bank rather than for himself in-
dividually.

**Same:** PRODUCTION OF REDEMPTION MONEY: WAIVER OF REQUIREMENT.
Where a mortgagor has conveyed the premises to the mortgagee
by absolute deed with right to redeem, but upon notice of inten-
tion to redeem the mortgagee repudiates the right and demands a
sum in excess of the mortgage debt, the mortgagor is released
from the requirement to produce the redemption money.

**Same:** PAYMENT OF MORTGAGE DEBT. The fact that a mortgagor who
has conveyed the property to the mortgagee, with the right to a
reconveyance within a certain time, is to procure the money from
a purchaser of the property, does not affect his right to maintain
an action for reconveyance; especially where it was contemplated
by the parties at the time of the conveyance that the money would
have to be realized from a sale of the property.

**Same:** OFFER TO REDEEM: RECONVEYANCE. A mortgagee to whom the
property has been conveyed with the right of reconveyance upon
payment of the debt, is not in position to object that the wife of
the mortgagor made the offer to redeem and was not shown to
have acted with authority of the husband, where it appeared that
she had personal charge of the property, that the husband was
away from home much or all of the time, that she conducted the
negotiations with the mortgagee, that she found a purchaser for
the property from whom the redemption money was coming, and
all her acts were ratified by the husband.

*Appeal from Johnson District Court.*—HON. R. P.
HOWELL, Judge.

THURSDAY, APRIL 8, 1909.

REHEARING DENIED TUESDAY, SEPTEMBER 28, 1909.

ACTION in equity to enforce the conveyance of real estate and for other relief. Bill denied, and plaintiff appeals.—*Reversed* and *remanded.*

*Milton Remley,* for appellant.

*Wade, Dutcher & Davis,* for appellee.

WEAVER, J.—The plaintiff alleges, in substance, that he gave a mortgage on certain real estate to the defendant to secure the payment of a stated sum of money, and that thereafter, the debt being unpaid, he conveyed the mortgaged property to the bank in payment of said debt, upon the express consideration that he might redeem or sell the property within one year, in which event the bank would reconvey the same, upon payment to it of $2,100 and interest. He alleges that within less than one year he did find a purchaser, and was ready and offered to pay to the bank the sum so agreed upon, and demanded a reconveyance of said property, which was refused, wherefore he comes into court, tenders the payment of what may be found equitably due said bank, and asks that a reconveyance may be decreed. The defendant denies the allegations of the petition.

The evidence tends to show that at some time prior to August, A. D. 1905, the plaintiff, H. E. Porter, borrowed money from the defendant bank, securing the repayment thereof by mortgage on two residence properties in the town of Lone Tree owned by said borrower, or by his wife, Lucy R. Porter. At the time of the transaction now in controversy, this mortgage indebtedness amounted to about $2,100, in addition to which

1. MORTGAGES: conveyance of property to mortgagee: payment and reconveyance: evidence.

the plaintiff owed Charles A. Fernstrom, then the cashier of said bank, a further sum of several hundred dollars. The bank had evidently become dissatisfied with the condition of the loan made in its behalf, and was insisting that it be paid, and the cashier was conducting a correspondence with plaintiff for that purpose. It would appear that plaintiff failed to keep an appointment with the cashier for August 10, 1905, and on August 12th the latter wrote him saying: "The 10th and 11th of this month are gone and yet you are not here as you said you would be. . . . Why don't you come and try to straighten the matter up some way? I showed your letter to the board and they said in regard to your proposition to make you an offer for the mortgaged property that they were not in the real estate business any more than they were forced to be. They gave me authority to settle with you when you came back the tenth." On August 17th the cashier wrote again, acknowledging receipt of a letter, and saying: "What you owe me individually, I can wait for till you are able to pay, and which I believe you will pay some time if you can, if not why I have lost several times that much before on others that I had befriended. It is altogether different with the money I loaned you as cashier of the bank. Now you could have settled this long ago by turning the property over to the bank, and you could still have had the privilege to sell the property and whatever more the property sold for would have come to you. The bank does not want one penny from you more than what is coming to it, and in fact, would take considerably less and then throw all the blame on me for trusting you. Now all this delay on your part has not benefited you at all— all it has done is to put me into trouble with the directors. You can still rectify this for the directors have given me full power to settle with you and I know you can settle with me on better terms than you possibly can with the attorneys if foreclosure is made." In a letter under date

of August 23d he says: "I will inclose a statement show-ing what you owe the bank and ask you to turn the mort-gaged property over to the bank by you and Mrs. Porter quitclaiming the property. Then I will cancel the notes and overdrafts, furthermore I will guarantee you indi-vidually that any time within a year you may have the property back by paying the mortgage notes and interest. If this is not a liberal offer to you I don't know how to make one." At the foot of the statement of account, re-ferred to in the letter, is added the following: "Now I will sell back to you at any time within a year by paying the bank the $2,100 and interest." About the same time, and evidently in pursuance of the same negotiation, Mr. Fernstrom called upon Mrs. Porter, told her of the proposi-tion he had made to her husband, and at his request she signed a deed to the bank for the mortgaged property, and forwarded it to her husband, who executed and returned the same to her, and she delivered it to the bank. She swears that she talked with Fernstrom on the subject sev-eral times before the deed was made, that he represented himself as authorized to make the settlement, and assured her that, if she and her husband would make the deed, and save the expense of a foreclosure of the mortgage, they should have a year to redeem the property, and in case they should find a purchaser within that period, they should have all the proceeds of such sale over and above the sum of $2,100 and interest. She further says that she informed Fernstrom that only upon such condition would the deed be given, and avers that it was on such consideration she joined in the deed. According to the further testimony of Mrs. Porter she secured a purchaser for the property some time in the month of February, 1906, and went to the president of the bank with notice of that fact and of the readiness of herself and plaintiff to make the redemption, but was informed by that officer that the matter had been placed in the hands of Fernstrom.

Proceeding then to Fernstrom, he denied having agreed to surrender the property on payment of $2,100 and interest, and demanded $3,500 as a condition of reconveyance. Evidence was also offered on behalf of the plaintiff tending to show that the property was at that time worth considerably more than the mortgage debt. The defendant offered no testimony in its own behalf. On this showing the court dismissed the bill as being without equity.

We are of the opinion that this finding cannot be approved. The direct and circumstantial evidence unite to sustain the proposition that in the settlement made with plaintiff and his wife Fernstrom, the cashier was acting as the authorized representative of the bank. Moreover, the defendant cannot be heard to deny the authority of the cashier while receiving and retaining the benefits of the contract made with the plaintiffs. That he did assure and promise these people that they should have the right to a reconveyance of the title to them, or to their purchaser, upon payment of $2,100 and interest within one year, and that upon consideration of such promise the deed was made, is shown beyond reasonable doubt. There is no ambiguity or uncertainty of terms to prevent the interference of a court of equity. The testimony in support of the plaintiff's claim stands undenied, except as a matter of pleading. The suggestion is made that the expression used by the cashier in his letter of August 23, 1905, "I will guarantee you individually that at any time within a year you may have the property back by paying the mortgage notes and interest," indicates that the agreement to reconvey was merely his private personal undertaking, and not intended to bind the bank. The reasoning is not persuasive. In the first place the language by itself and standing alone indicates not an original independent obligation, but rather the addition of his personal guaranty to the obligation or agreement of the bank, while, if we read the letter in the light of the entire series of com-

munications and the oral negotiations leading up to the conveyance, there is no escape from the conclusion that in all this transaction looking to the collection of the mortgage debt Fernstrom was the representative of the bank, and that he spoke for the bank in promising to reconvey the property.

It is argued that there is no proof of any tender of the amount due the bank. The showing in this behalf is sufficient. It is true that when Mrs. Porter notified the

*2. SAME: production of redemption money: waiver of requirement.*

bank of her desire to pay off its claim, she did not have the money with her, but she was able to obtain it within a brief period. She was met, however, with a repudiation of the agreement, and a demand for a largely increased sum, a situation which, under familiar rules, released her from the necessity of producing the money. *McDermott v. Mahoney,* 139 Iowa, 292; *Jones v. Hartsock,* 42 Iowa, 147; *Binford v. Boardman,* 44 Iowa, 53.

The fact that the money which would have been used to pay off the bank's claim, had it been willing to perform the agreement, would have been derived or received from

*3. SAME: payment of mortgage debt.*

the purchaser of the property cannot affect plaintiff's right to maintain the suit. Indeed the agreement indicates very clearly the contemplation of the parties that the ability of the plaintiff or his wife to take advantage of its terms depended upon their success in finding a purchaser, and defendant cannot justify its refusal to perform because plaintiff could not command the necessary funds from some independent source.

Finally it is insisted that as the alleged offer to redeem was made by the wife, and not by plaintiff in person,

*4. SAME: offer to redeem: reconveyance.*

and as she is not shown to have acted with his authority, it is insufficient to impose any liability on the bank. As the wife of plaintiff, she had a personal and direct interest in preserving

the property from sacrifice; and, even in the absence of any express authority from the husband, we are not ready to say that she might not exercise the right to redeem. But however that may be, it does appear that Porter himself was away from home during most or all of the time covered by these transactions, and that the wife was in personal charge of the property and to a great extent conducted the negotiations with the bank. It was she who first executed the deed, obtained her husband's signature thereto, and delivered it to the bank. She undertook the task of finding a purchaser in order to save what margin there may have been in the property; and, as the husband has ratified and confirmed her actions therein, we think defendant is not in position to question her authority in the premises. The defendant should be held to perform its contract to reconvey.

For the reasons stated, the decree of the district court must be reversed; and, as it indirectly appears in the evidence that a part of the property has been sold by the defendant, and it may be found upon further examination that a reconveyance cannot be had, thus rendering necessary the granting of alternative relief, and accounting for rents and profits, the cause will be remanded for a decree in harmony with this opinion.—*Reversed.*