IOWA UNIVERSALIST CONVENTION, Appellee, v. A. H. HOWELL et al., Defendants, Appellees; L. A. ANDREW, Superintendent of Banking, Receiver, Defendant, Appellant; D. W. BATES, Substituted Appellant.

No. 42372.

1144

May 15, 1934.

Rehearing Denied December 13, 1934.

Edward L. O'Connor, Attorney-general, and Ben J. Gibson and Clarence I. Spencer, for appellant.

R. P. Birdsall, and Miller, Miller & Miller, for appellee Iowa Universalist Convention.

Marion R. Hammer, Jr., for appellees A. H. and Ada E. Howell.

KINTZINGER, J.—On May 29, 1919, one John P. De Cook entered into a real estate contract to sell one J. E. Reid 120 acres of farm land in Polk county, Iowa. Reid assigned the contract to the Iowa Farm Investment Company, which later assigned it to the defendants A. H. Howell and Ada E. Howell. On February 28, 1920, De Cook conveyed the real estate direct to Howell by warranty deed. Howell then executed a first mortgage of $22,000 to De Cook, a second mortgage of $8,000 to the Iowa Farm Investment Company, and paid the balance in cash. On October 15, 1922, A. H. Howell and wife executed a note of $5,600, secured by a third mortgage on the real estate in question, to the Altoona Savings Bank, hereinafter referred to as the Bank. The mortgage was duly recorded on December 1, 1922, and delivered to the Bank December 2, 1922. Appellee claims to have purchased this mortgage from the Bank, and these foreclosure proceedings were commenced thereon.

Mr. Reid was president of the Bank from 1919 until 1924, when he was appointed cashier. He held this position until February, 1925, when his connection with the bank was severed entirely. During all that time and for several years thereafter, Reid was also secretary and treasurer of the Iowa Universalist Convention, the appellee herein. He was also a real estate dealer and conducted the negotiations resulting in the sale to the Howells.

One V. M. Henney was cashier of the Bank in 1922. On October 15, 1922, the Bank, through Reid as president and V. M. Henney as cashier, entered into an agreement for the assignment of the $5,600 note and mortgage to the Iowa Universalist Convention represented by the same Reid as its secretary and treasurer; said assignment and agreement being as follows:

"In consideration of $4500 to them in hand paid the Altoona Savings Bank, a body incorporated, by its President and Cashier hereby sell, assign and set over unto the Iowa Universalist Convention the annexed agreement together with certain interest and rights under the same as follows:

"The Iowa Universalist Convention having on hands by its Treasurer J. E. Reid funds amounting $4,500 and the concensus of opinion of the Board of Trustees of the Iowa Universalist Convention that such funds should be loaned on first mortgages Iowa farm lands, the said J. E. Reid being also President of the Altoona Savings Bank had offered to him a loan of $5600 on 120 acres near Altoona Iowa which he did not care to make out of the funds of the bank

and which he did not have all of the amount available with the Iowa Universalist Convention, did make the loan to the Altoona Savings Bank taking note and mortgage therefor and hereby assigned the portion of $4500 to the Iowa Universalist Convention for security for a note of $4500 made to the Altoona Savings Bank and endorsed by the Altoona Savings Bank with recourse.

"This assignment and agreement is to remain in effect until the said mortgage is paid or until one of the body's Incorporate purchase of the other body its full share as shown by two promissory notes, one for $1100 in name of the Altoona Savings Bank and one for $4500 in the name of the Altoona Savings Bank and endorsed by V. M. Henney as cashier.

[Signed]   J. E. Reid<br>V. M. Henney."

The negotiations for this assignment were made by Reid and Henney on the part of the Bank with J. E. Reid, the treasurer, for and on behalf of the Iowa Universalist Convention. The records of the Bank show that $4,500 of this money was paid into the Bank on or about the 8th of December, 1922, and the balance of $1,100 was paid into the Bank on or about the 15th of October, 1924.

Plaintiff claims that when the balance of the $5,600 was paid, a regular assignment of the $5,600 mortgage was executed to the Iowa Universalist Convention. At that time a new note of $5,600, to replace the original note, was executed by A. H. Howell and wife direct to the Iowa Universalist Convention. The alleged assignment of said $5,600 mortgage, together with the new note and original mortgage, were delivered to the Iowa Universalist Convention. There is a serious conflict in the evidence as to whether or not the assignment of October 15, 1924, was in fact duly executed by the Bank. The original $5,600 note was not delivered to the Iowa Universalist Convention, but remained in possession of the Bank. Reid testified that he thought the old note was returned. The original note was indorsed on the back: "Altoona Savings Bank, J. E. Reid, president." "Interest paid April 15, 1923, $224.00." It is not necessary to decide whether or not the assignment of October 15, 1924 was in fact executed by the Bank or not, because the evidence shows without conflict that the full consideration for the assignment of the original note and mortgage, under the assignment and agreement hereinabove referred to, was fully paid by the Iowa Universalist Conven-

tion to the Bank on October 15, 1924, and thereby the $5,600 mortgage became the property of the Iowa Universalist Convention.

The present bank officers and several directors testified that they knew nothing about the assignment of this $5,600 note and mortgage to the Iowa Universalist Convention, and that they believed the Bank remained and was the owner of said $5,600 note and mortgage.

The evidence also shows that on or about April 28, 1923, the Bank purchased the $8,000 second mortgage for $5,000; and on September 10, 1923, received a warranty deed to the real estate from A. H. Howell and wife. Notwithstanding this deed, the Bank granted the Howells an extension of the mortgage; but foreclosure proceedings were commenced by the Bank in 1923. These proceedings were disposed of in January, 1924. Thereafter the Howells abandoned all claim to the land and the farm was ever since operated by the Bank as owner under its deed received in 1923.

The legal title of the real estate was then in the Bank, subject to the following liens of record: First, the De Cook mortgage of $22,000; second, the Iowa Farm Investment mortgage of $8,000 which was assigned to the Bank in April, 1923; third, the $5,600 mortgage in question, originally executed to the Bank. The latter is the mortgage now claimed by appellee and upon which it commenced these foreclosure proceedings.

In 1926 and 1927 the Bank paid the De Cook first mortgage in full, amounting in all to over $23,000. De Cook then delivered the $22,000 note and mortgage to the Bank, together with a satisfaction thereof. This was duly filed for record by the Bank on March 3, 1927. On February 24, 1927, the Bank also canceled and released of record the second mortgage of $8,000 and the $5,600 mortgage in question.

I. It is claimed that the president and cashier of the Bank were not authorized by the board of directors to execute the assignment and agreement referred to. While there may be no record evidence of such authorization in the minutes of the corporation, there is testimony tending to show that such authority was given. The evidence shows without conflict, however, that the assignment and agreement was executed for the Bank by its president and cashier; that the Bank received from appellee and retained $4,500 thereon. The evidence also shows without conflict that an additional $1,100 thereon was later paid by appellee to and retained by the

Bank. Therefore even though it be assumed that original authority to execute the assignment and agreement was not authorized, the action of the Bank in receiving and retaining the $5,600 paid thereon by appellee is a ratification of the acts of its president and cashier in executing the agreement. German Sav. Bank v. Des Moines Nat. Bank, 122 Iowa 737, loc. cit. 741, 98 N. W. 606; Porter v. Farmers & Merchants Sav. Bank, 143 Iowa 629, loc. cit. 633, 120 N. W. 633; Security Sav. Bank v. Hambright, 195 Iowa 1147, loc. cit. 1150, 193 N. W. 576; German Am. State Bank v. Farmers & Merchants Sav. Bank, 203 Iowa 276, loc. cit. 280, 211 N. W. 386.

In Security Savings Bank v. Hambright, supra, loc. cit. 1150, we said:

"The question then arises whether the plaintiff may refuse to recognize the conditions attached to the paper by the act of its president, who negotiated the deal and at the same time insist upon the legal obligation of the note so obtained. Let it be admitted, as an abstract proposition of law, that Davis was not the bank, and that, without the authority or approval, express or implied, of the board of directors he could not bind the bank to a recognition of the agreement negotiated by him with the defendant; yet a bank, no less than a private individual, is subject to the rule which is as sound in law as in morals, by which the principal who ratifies or accepts the benefit of an unauthorized act of its agent takes it burdened with the conditions and qualifications which would attend it in the hands of the agent himself; or, to state it in plainer terms, the principal cannot ratify so much of the unauthorized act of the agent as it thinks to its advantage and repudiate the remainder."

We conclude that the action of the Bank is a ratification of the assignment and agreement, and it is now estopped from denying that it is bound thereby.

The assignment agreement clearly implies that the Bank is to assign to appellee the $5,600 note and mortgage upon full payment therefor. The appellee did pay the full amount thereof to the Bank, and it necessarily follows that the full title and ownership of the $5,600 note and mortgage referred to became vested in appellee from and after October 15, 1924, when the final payment was made. All interest payments on said note and mortgage were thereafter made to the Iowa Universalist Convention.

II.   Appellant contends that because Reid, appellee's treasurer, knew that the mortgage was not a first mortgage, that his knowledge is imputed to the Iowa Universalist Convention; that because he knew the $5,600 mortgage was only a third mortgage appellee is estopped from having it foreclosed as a first mortgage.   It is apparent that appellee understood the money with which it purchased the $5,600 mortgage was to be invested in first mortgage farm lands. The mortgage and the extension thereof both recite that it is a first mortgage, and when plaintiff paid the $5,600 to the bank therefor it was led to believe it was such.

The clear implication of the assignment and agreement is that the bank agreed to sell appellee a $5,600 note secured by a first mortgage on farm land.  Under this situation, we find Reid acting as agent for both parties.

Appellee contends that where an agent acts for the beneficial interest of one of his principals, and against the interests of his other principal, knowledge of the agent cannot be imputed to his other principal.   In other words, Reid's knowledge that the money was being invested in a third mortgage cannot be imputed to appellee.   The application of such a rule has some slight support in Morey v. Laird, 108 Iowa 670, loc. cit. 675, 77 N. W. 835; Daus v. Short, 169 Iowa 1, loc. cit. 4, 150 N. W. 1047;  Watt v. German Sav. Bank, 183 Iowa 346, loc. cit. 380, 165 N. W. 897;  Port Huron Mach. Co. v. C., M. & St. P. Ry. Co., 199 Iowa 295, loc. cit. 299, 201 N. W. 779; Ross v. Northrup, King & Co., 156 Wis. 327, 144 N. W. 1124.

In Morey v. Laird, supra, loc. cit. 675, we said:

"The fact that the plaintiff acted as the agent of each party to the transaction did not relieve him of the duty of loyalty to each principal.   *   *   *   It is said in Mechem, Ag., section 454, that 'loyalty to his trust is the first duty which the agent owes to his principal.   Without it the perfect relation cannot exist.'   *   *   *  'The agent will not be permitted to serve two masters, *without the intelligent consent of both.'*   *   *   *   Mechem, Ag. section 67.  It is the duty of the agent to inform his principal of facts material to his interests which are known to the agent.  1 Am. & Eng. Enc. Law (2d Ed.) 1069."

In Port Huron M. Co. v. C., M. & St. P. Ry Co., supra, an agent was employed by some farmers to purchase machinery from

plaintiff. Before closing the deal the agent was also employed by the Machine Company. In that case we said:

"It could not take the benefit of such an agency and escape the burden of responsibility therefor. *By such arrangement also it destroyed Hollinberger's agency for the purchasing group so far as its own right to rely on such agency was concerned.*" (Italics ours.)

The action of Reid in effecting the sale of a practically worthless third mortgage of $5,600 for cash was in the sole interest of his bank, and constituted a fraud upon his other principal, the appellee. In view of the matters discussed in the next division hereof, in reference to the release of the first and second mortgages by the bank, we deem it unnecessary to determine here whether or not Reid's knowledge of the character of the $5,600 mortgage can be imputed to appellee.

III. Appellant contends that it paid off the first two mortgages against the real estate under the mistaken belief that it was the owner of the property; that the $5,600 mortgage was released under the belief that it still belonged to the bank. Appellant claims that having so paid the first two mortgages, the release thereof should be rescinded and that it should be subrogated to the rights previously existing under said mortgages.

It is the general rule of law that when the title owner of real estate pays off a prior mortgage lien, the mortgage does not merge in the title if it is clearly intended that a merger should not take place. Under such circumstances the owner is entitled to be subrogated to the rights of the mortgagee. Bennett Sav. Bank v. Smith, 171 Iowa 405, 152 N. W. 717; Patterson v. Mills, 69 Iowa 755, 28 N. W. 53.

It is likewise the well-settled rule of law in this state, that where the owner of the title pays off a mortgage on the real estate, with the intention of releasing, canceling, and extinguishing the same *with knowledge of another outstanding junior lien,* then he is not entitled to subrogation, and if with such knowledge he does pay off, cancel, release, and extinguish such prior liens, when he was not required so to do, he is guilty of negligence in so doing, which will prevent him from the rights of subrogation to a prior mortgagee. Gammon v. Kentner, 55 Iowa 508, loc. cit. 512, 8 N. W. 348; Weidner v. Thompson, 69 Iowa 36, loc. cit. 38, 28 N. W. 422;

Mather v. Jenswold, 72 Iowa 550, loc. cit. 552, 32 N. W. 512, 34 N. W. 327; Fouche v. Delk, 83 Iowa 297, loc. cit. 300, 48 N. W. 1078; Ft. Dodge Bldg. & Loan Assn. v. Scott, 86 Iowa 431, loc. cit. 434, 53 N. W. 283; Webber v. Frye, 199 Iowa 448, loc. cit. 451, 202 N. W. 1.

In Weidner v. Thompson, supra, loc. cit. 38, we said:

"The controlling point in the case involves the consideration of the question whether the mortgage was paid, and was intended to be canceled, and was not intended to subsist as a lien for the benefit of plaintiff. It cannot be doubted that the law will look to the intention of the parties, and the interest of the plaintiff, in order to determine whether the mortgage is to be regarded as paid and canceled. The fact that it was canceled of record, will not avail to discharge the mortgage, if the parties intended the lien should continue, and plaintiff's interest demanded it. But if the parties intended to discharge the mortgage, and the debt was in fact paid, and not transferred to plaintiff, the cancellation must stand, and the lien be regarded as discharged. The mere fact that plaintiff's interest would have been better protected by permitting the lien to stand, will not control against the intention, clearly established. The law will permit a party in such a case, as in others, to act and contract in a manner which would not result to his interest. There is no conflict of decisions upon these principles, and we think there is no dispute between counsel in relation thereto."

In Mather v. Jenswold, supra, loc. cit. 552, we said:

"The only question in the case is whether the plaintiff is entitled to have the satisfaction of the Simmons mortgage set aside, and that he be subrogated to all the rights of Simmons. It seems to us that he is not entitled to such relief. The plaintiff made the loan to Lord for the express purpose of paying the Simmons mortgage, and it was well understood that the plaintiff was to accept a new mortgage. The plaintiff got all he bargained for. There was no mistake, except that the plaintiff failed to exercise the diligence required in the examination of the records, and therefore failed to discover the existence of the judgment and sale thereunder. No one can be blamed, but he must suffer loss simply because he was negligent. There is no principle which will allow him to take advantage of that, to the injury of the diligent."

1152

In Fouche v. Delk, supra, loc. cit. 300, we said:

"We do not find in the testimony a word that even remotely sustains the claim that the parties, when the deeds were executed, intended anything but an absolute payment and discharge of the mortgage lien by the defendant. Much is said in argument to the effect that the value of the land (the 30 acres) did not exceed $900; that John Delk was dealing with his son for his support; that the purpose was to release the homestead from the lien of the mortgage; and that it could only be done, so as to protect defendant, by having the mortgage assigned to him, and the lien continued; and that it is reasonable to suppose the parties so intended. But it is unreasonable to suppose they so intended, and not only failed to use any language to indicate the intent, but, on the contrary, used language of a different import. The defendant assumed the burden of showing the facts otherwise than expressed in the deeds, and to do so he must show more than that the facts as he claims them would be to his own interest. The facts are clearly expressed in the writings of the parties, and sustain the legal conclusion above announced. With the facts as we find them, we need not consider the authorities cited by appellee."

In Ft. Dodge Bldg. & Loan Assn. v. Scott, supra, loc. cit. 434, we said:

"Plaintiff's contention is that, as it furnished the money with which said mortgages were paid under an agreement that it should be so applied, it is entitled to have the satisfaction of said mortgages cancelled, and to be subrogated to all the rights of the mortgagees. The right to subrogation rests upon equitable grounds, and is never granted as a reward for negligence. While it may be true, as claimed, that no equities inhere in defendant's lien, that it is simply a lien given by law, it is certainly as true that plaintiff's claim is equally void of equities. The position of the plaintiff is the result of its own negligence. It relied upon an abstract of title which was not brought up to date, and which failed to note the pendency of this defendant's action, or the judgment in his favor. An examination of the court records of the county on the day the loan was made would have informed the plaintiff of the existence of this judgment, and that it was a lien upon these lots, whether owned by both or either of the Baehrings. Without making this examination, which the most ordinary care required, plaintiff made the loan, and ac-

cepted its mortgage. Surely equity will not reward such negligence by applying the doctrine of subrogation in favor of the negligent party. To do so would encourage carelessness in taking such securities."

In Webber v. Frye, supra, loc. cit. 452, we said:

"We think appellant was not only negligent, but that it was his intention that the lien of the mortgages was to be extinguished by the payment and satisfaction thereof. In such circumstances, his agreement with the mortgagor and the other parties to the contract of purchase that his mortgage should be a first lien on the premises cannot avail him. He had a right to waive the benefit of the contract in that respect, and this he must be held to have done."

In the case at bar appellant at the time it paid the $22,000 first mortgage and the $8,000 second mortgage well knew that there was a third mortgage of $5,600 outstanding against the real estate. It sold this $5,600 mortgage to appellee for that amount of money and received the cash therefor. This sale was made with the implied understanding that it was a first mortgage. With the knowledge that this was a third mortgage, the Bank in 1923 acquired the second mortgage of $8,000 by paying $5,000 therefor. In 1926 and 1927 it paid off the first mortgage and received a satisfaction thereof. The release and satisfaction of both of these mortgages were duly filed and recorded by the appellant. It is true it also released the $5,600 mortgage appearing of record in its name. All this was done deliberately and with the intention of releasing all of these mortgages. The releases of the first two mortgages were also made with full knowledge that appellee was the owner of $5,600 lien of a third mortgage. The release of the third mortgage was made without any right or authority because it well knew that such mortgage belonged to appellee and the release thereof was therefore of no effect. It now claims that it is entitled to be subrogated to the rights of the first and second mortgages under the doctrine of equitable subrogation. So far as the equities between the parties are concerned, they are all in favor of appellee. Appellant sold the $5,600 mortgage in question to appellee and received the full amount of cash therefor. It will not do now for the appellant to say it did not know of the existence of the outstanding lien of this mortgage, which it sold to the appellee herein for cash. The officers of the Bank at the time the assignment was made and at the

time the money was paid in knew all about the matters in controversy at that time. " 'What the directors know regarding matters affecting its interests, the corporation knows.' The bank, once informed, will not be permitted to forget upon some change in its directorate." Watt v. German Sav. Bank, 183 Iowa 346, loc. cit. 366, 165 N. W. 897. The money received by the Bank from the Iowa Universalist Convention was never repaid to that society, and the appellant is not now entitled to any equities under which it is entitled to subrogation of any rights under the first two mortgages, both of which it intentionally, although negligently, fully canceled and released. The mortgages so canceled and released are fully extinguished.

The lower court held that appellee was entitled to foreclose its lien under the $5,600 mortgage as prior and superior to any claim of appellant. The consideration for this mortgage was received from the appellee with the understanding that it was receiving a first mortgage therefor. It would therefore be inequitable and unjust to deprive appellee of its rights thereunder, because its mortgage may have been raised to a first mortgage through appellant's act in paying off the first two mortgages. The lower court found that the purported release of the $5,600 mortgage by the Bank should be canceled and set aside. It further found that the Bank was not entitled to subrogation to any rights under the first and second mortgages, and entered a decree giving appellee the rights of a first mortgage under its $5,600 mortgage. Decree of foreclosure was entered thereon.

Under its deed to the land in question, appellant is only entitled to the right of redemption allowed by statute.

Some other questions are raised and considered but are not deemed of sufficient importance to affect the result of this conclusion.

We believe the decree of the lower court was right, and the same is hereby affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, ALBERT, ANDERSON, KINDIG, MITCHELL, and DONEGAN, JJ., concur.