## CUMBERLAND TELEPHONE & TELEGRAPH CO. v. CITY OF EVANSVILLE.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1906.)

### No. 1,080.

TELEGRAPHS AND TELEPHONES—CITY ORDINANCES—ABANDONMENT.

Plaintiff telephone company refusing to furnish telephones at a statutory rate, defendant city repealed its original franchise ordinance, whereupon plaintiff brought suit against the city for damage sustained in the destruction of its property, and the city instituted suit for the removal of poles and wires from the streets. The controversy went on until 1887, when a stockholder of plaintiff company, whose subscribers had been reduced in the meantime to 37, sought and obtained a new franchise ordinance, which provided that it should terminate after 15 years. Immediately thereafter plaintiff began to rebuild its exchange and system, and the litigation between plaintiff and the city was allowed to lapse. *Held*, that plaintiff thereby accepted the franchise of 1887, and was estopped thereafter to claim any further rights under its original franchise.

Appeal from the Circuit Court of the United States for the District of Indiana.

For opinion below, see 127 Fed. 187.

The bill was to enjoin the appellee from destroying appellant's telephone plant in the city of Evansville, Indiana. On final hearing the bill was dismissed. The facts are stated in the opinion.

William L. Granbery and John J. Vertrees, for appellant.

Geo. A. Cunningham and W. M. Wheeler, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion. The appellant maintains its poles and wires in the streets and alleys of Evansville,

as successor or assignee of the Evansville Telephone Exchange, to which was granted in December, 1882, its successors and assigns, the right to erect poles and wires in the streets and alleys of the city, for the purpose of operating a telephone plant; the transfer from the Evansville Telephone Exchange to appellant taking place in June, 1883, at a time when the Evansville Company had about five hundred subscribers.

May 24th, 1886, the Common Council of Evansville adopted an ordinance in terms repealing the ordinance of December, 1882; and in July, 1887, passed another ordinance in terms granting to appellant substantially the same rights embodied in the ordinance of 1882, except that the ordinance of 1882 was subject to no limitation in point of time, while the ordinance of 1887 was repealable after fifteen years. And August 18th, 1902, an ordinance was adopted formally repealing the ordinance of 1887, and directing the appellant to remove its poles and wires from the streets within ninety days.

The contentions of the appellee are, first, that the Common Council had no right in 1882 to grant a perpetual franchise; wherefore the ordinance of 1882 is nothing more than a revocable ordinance;

Second, that appellant acquired no rights under the pretended assignment to it by the Evansville Telephone Exchange, such pretended assignment being ultra vires;

Third, that whatever rights were acquired by appellant under the ordinance of 1882, and its assignment, were forfeited by its failure to comply with the ordinance, and with a law of the state fixing rates to be charged; and

Fourth, that all rights under the ordinance of 1882 have been relinquished and abandoned by appellant, by its acceptance of the ordinance of 1887, under which the right of revocation by the city, at the end of fifteen years, is expressly stipulated.

All of these propositions are controverted by appellant, and in addition it is urged that the contract of assignment between the two telephone companies being an executed one, and acquiesced in at the time by the city, the city is estopped from relying upon the defense that such assignment was ultra vires and illegal. And, apart from the transactions that led up to the ordinance of 1887, there is great force in the position thus taken. In view, however, of the conclusion to which we have come, upon the question of fact whether the ordinance of 1882 was relinquished and abandoned in an acceptance of the ordinance of 1887, these discussions become immaterial.

Did appellant accept the ordinance of 1887, or lead the city to believe that it had so accepted that ordinance, and was operating under it? That is the question of fact upon which the right of the city to exclude the appellant from its streets now turns. And it is a question of fact that must be determined upon a survey of the entire situation, giving effect to the reasonable inferences, as well as to the specific things proven, that the situation as shown in the record discloses. Thus considered, the question of fact raised is not a difficult one.

In 1885 the legislature of Indiana passed an act limiting to three dollars per month, the rates to be charged telephone subscribers. The

appellant declined to give its subscribers continuous service at these rates. In 1886, the constitutionality of this law was sustained by the Indiana courts. The appellant still refused continuous service at the rates prescribed. Thereupon war opened between the city and the company. The city carried on the war by disconnecting the telephones furnished the city officials, by ordering the chief of police to cut down the poles and wires of appellant's system, and, finally, by repealing the ordinance of 1882. The company carried on the war by a suit against the city and its various officials for the damage sustained in the destruction of its property, which suit went to trial and judgment in January 1887—the city meantime instituting suit also, charging that the telephone exchange had been dismantled, that no service since June or July had been rendered to the city or its inhabitants, and asking for the removal of the poles and wires, and the annulling of all rights of the company under its ordinances; which suit was still pending when the new ordinance of 1887 was passed. The effect of this war upon appellant was to reduce its subscribers from four hundred and ninety-six, July 1st, 1886, to thirty-seven a month later; and the effect on the city was to involve it in lawsuits and deprive it of telephone service.

In this state of affairs negotiations for the ordinance of 1887 were opened June 6th, 1887. The first step taken was a communication to the city council from one E. P. Huston, purporting to act for the appellant, presenting to the council an ordinance granting to appellant the right to establish a telephone system, and to place and maintain its poles and wires in the public streets and alleys of the city. There is no direct evidence, except from Huston himself, that he had authority to present this ordinance. The ordinance presented does not appear in the record. But Huston at the time, was a stockholder and director in the company. The president of the company knew that Huston, one of his stockholders and directors, had presented the ordinance, and was "busying himself" with the controversy. And, what is of equal significance, no other representative of the company, at this important epoch, appears to have been upon the ground.

The evidence shows that between June 6th, when the Huston ordinance was presented, and July 18th, when the final ordinance was passed, there were many consultations between Huston and the members of the city council, and other city officials, the purpose of which was to bring about an ordinance that would be satisfactory both to the company and to the city. Also that meetings were held by the business men of the city attended by Huston, the purpose of which was to formulate public opinion toward a settlement of the controversy—all of which eventuated in the ordinance passed July 18th, 1887.

In what respect the ordinance passed differed from the one presented by Huston is not disclosed, except that at one of the meetings Huston stated that the directors of the company would be willing to accept a twenty-five year ordinance. Nor is there disclosed the communications that passed between Huston and the home office at Nashville, Tenn.; nor whether any communications in fact passed.

But instantly the ordinance passed, the war ended. The city officials were furnished immediately with telephones in accordance with the requirements of the ordinance. The suit by the city against the company lapsed, and finally was dismissed. The company, undisturbed by the city, took possession anew of the streets, replacing the cut poles and wires with new poles and wires. And what had become, under the conflict, a broken down, disappearing system, with but thirty-seven subscribers in August, 1886, became, under the new ordinance, a growing system, having a year later one hundred and forty-four subscribers, two years later three hundred and eleven; growing with a steady growth that finally reached nearly twenty-five hundred subscribers.

These facts, looked upon as an entirety, leave us without doubt that whether the company formally accepted the ordinance, or not, the city was led by the company's conduct to believe that the ordinance had been accepted. It is of little consequence, in arriving at this conclusion, that we cannot from any direct evidence in the record, ascertain whether Huston was authorized to negotiate with the city or not. It is of little consequence that we cannot, from any direct evidence in the record, ascertain whether his negotiations were from time to time reported to the home office of the company. That Huston was a director and stockholder of the company we know. That the company had no other representative on the ground, we know. And that companies under a situation and strain such as existed at Evansville, are not in the habit of dwelling in ignorance and going unrepresented, we know. Indeed, considering in this connection, the opportunity the company had to clear up, by its own records or correspondence, the facts of the situation, we are without doubt that the company was cognizant of every step taken; and whether formally accepting the ordinance or not, intended that the city should be left under the impression that the ordinance was accepted, and would thereafter be the basis of their mutual rights.

An ordinance passed and made the basis of performance under such circumstances ought to be held binding, and in our judgment is binding, as a contract between the parties. The company took the benefits of the ordinance. The city, under the impression created, surrendered every supposedly advantageous position it had occupied. It restored to the company the possession of the streets. It dismissed its suits. It refrained from granting the streets to a competing company. This was either peace under the ordinance as a treaty, or unconditional capitulation. That it was capitulation is past belief. That it was a treaty of peace, accepted by the city as such, and known to the company that it was so accepted, is beyond reasonable doubt.

The appellant was in the Circuit Court asking for the writ of injunction. It is our judgment that under the circumstances disclosed, the writ was rightly denied.

The decree of the Circuit Court is affirmed.