# CENTRAL METROPOLITAN BANK v. CHIPPEWA COUNTY STATE BANK[1]

June 27, 1924.

No. 24,043.

**Indorsement "without recourse" does not affect separate guaranty of indorsed note.**

1. Record examined and *held*: (1) That transaction was between plaintiff and defendant; (2) that notes sued on were included in guaranty given to plaintiff; (3) that an indorsement "without recourse" on a negotiable instrument protects the indorser against liability by reason of the indorsement, but has no tendency to relieve the indorser from his obligation arising from his separate contract of guaranty; (4) that such indorsement does not prevent the indorser from assuming liability by some other written contract of guaranty.

**Local bank estopped against disputing validity of its guaranty.**

2. The president of a local bank was also secretary and treasurer and a large stockholder in a manufacturing corporation, a customer of the bank, and the bank was carrying a large amount of its paper. The customer negotiated a line of credit for discounting its paper with plaintiff bank who declined unless the paper came through the local bank and was guaranteed by it. The president of the local bank, in its behalf, signed a guaranty of such paper without any resolution of authority from the board of directors or stockholders and caused a letter in detail to be written to plaintiff, inclosing the guaranty, and procured the cashier's signature thereto, without his reading it. Paper to the extent of $50,000 was turned over and much returned and replaced and considerable business transacted between the two banks in reliance on the guaranty. In suit on guaranty, *Held*: (a) That if the president had adverse interests and was the sole representative of the local bank in this transaction, his knowledge would be the knowledge of the local bank of which he was president; (b) that if the cashier was a party to the transaction, his knowledge would be the knowledge of the bank; (c) that the bank is chargeable with all the knowledge its cashier would have reasonably acquired had he read the letter which he signed and given its contents the ordinary attention that its importance required; (d) that the local bank, under such circumstances, is estopped from questioning the validity of the contract of guaranty.

[1]Reported in 199 N. W. 901.

Action in the district court for Chippewa county to recover $6,291.41. The case was tried before Qvale, J., who made findings and ordered judgment in favor of plaintiff for $6,127.17. From an order denying its motion for judgment in its favor notwithstanding the decision, or for a new trial, defendant appealed. Affirmed.

*H. V. Mercer, Johnson & Co.* and *C. A. Fosnes,* for appellant.

*Christofferson, Walsh, Christofferson & Jackson* and *Oluf Gjerset,* for respondent.

WILSON, C. J.

This is an action brought to recover $6,291.41 and interest according to the tenor of 13 promissory notes aggregating that amount. Plaintiff is a banking corporation in St. Paul and the successor of the Metropolitan Bank, and all transactions with the latter will be referred to as with the plaintiff. Defendant is a banking corporation at Montevideo.

On November 16, 1920, the Moyer Manufacturing Company was a corporation engaged in business at Montevideo and was a customer of defendant. In September, 1920, some negotiations took place between the Moyer Manufacturing Company and plaintiff in which plaintiff was solicited to carry some of its notes or trade acceptances. Plaintiff refused to do this, unless through the defendant bank and upon the written guaranty of defendant guaranteeing payment of such paper.

Lloyd G. Moyer was secretary and treasurer and a large stockholder in the Moyer Manufacturing Company. He was also president of defendant bank. His son, Malcolm B. Moyer, was president of the Moyer Manufacturing Company, but was not in any way connected with the defendant bank, which was operated by its officers, the said Lloyd G. Moyer, president, S. L. Moyer, vice-president, Victor Freeberg, cashier, B. A. Whitmore, assistant cashier. These four men, together with Iver Larson, a local merchant, constituted the board of directors. The written guaranty is signed by defendant through its president. This guaranty relates to paper which plaintiff was purchasing of defendant up to $35,000, and it says that

defendant will carry a balance with plaintiff in its regular checking account of an amount equal to at least 75 per cent of the amount of paper which plaintiff is holding under this arrangement. This guaranty also authorizes plaintiff to charge all such notes against the defendant's account without notice if the contract was violated. This account was opened November 18, 1920, with a deposit of acceptances aggregating $20,219.03. This account was active, but total deposits were only about $50,000; all deposits were paper of Moyer Manufacturing Company owned by defendant bank. These notes would be turned back to defendant about 7 days prior to maturity and charged back to defendant's account on plaintiff's books. Defendant would send in other paper from time to time. The amount returned 7 days before maturity totaled about $27,000. There were 25 or 30 transactions returning notes, usually sending 3 or 4 notes at a time. The return of an item in this way was a closed transaction with plaintiff. The account was closed and the notes in this suit remained unpaid. Most of the notes were indorsed by defendant without recourse. One note was indorsed by the payee, Moyer Manufacturing Company, but not by the bank. This note however, was a renewal.

Defendant in its answer claims that this was a transaction between plaintiff and Moyer Manufacturing Company and that defendant was a mere agency between them. It claims that the guaranty was unauthorized and void, and that defendant stood upon its indorsement without recourse.

The case was tried to the court without a jury. The court found for the plaintiff. He found the allegations of the complaint true and then added this language:

"That although the defendant's contract of guaranty of the payment to plaintiff of the notes described in the complaint, as well as the guaranty of payment of numerous other notes, was not authorized by any resolution of the board of directors of the defendant, still the defendant was aware of its existence and it had had and received benefits from and under said contract."

Defendant has appealed from an order denying its motion for amended findings and for judgment or for a new trial.

The appellant has made a number of assignments of error, but the conclusion which we have reached, in the ones discussed by us, makes it unnecessary to discuss all of them.

The claim that this transaction was between plaintiff and the Moyer Manufacturing Company is without merit. The correspondence and testimony establish beyond question that the defendant was the party plaintiff was dealing with, and that there are elements of this transaction that were essentially advantageous to defendant. It was being aided in carrying the paper of a customer. It was in no sense the agent of a disclosed principal as suggested in the appellant's brief.

It is also claimed that the notes now unpaid and held by plaintiff are not included in the guaranty, and that these notes and particularly the ones which were indorsed and delivered subsequent to the delivery of the first paper, amounting to $20,219.03, were controlled entirely by the special contract of indorsement without recourse. The intention of the parties in this respect, which is clearly reflected in subsequent dealings, was that the paper to be carried would be continually changing and that the amount was not to exceed $35,000. The parties never intended to have the guaranty fade away as the paper was changed, but, on the contrary, it was the understanding of the parties that all bills, notes or acceptances that should be discounted with plaintiff by the defendant were guaranteed by this instrument of guaranty. It was faithfully carried out along that line until the management of defendant went into new hands.

The indorsement without recourse does not constitute a contract between plaintiff and defendant nullifying the contract of guaranty. Such contract of indorsement protects the indorser without recourse against liability by reason of the indorsement. Goolrick v. Wallace, 154 Ky. 596, 157 S. W. 920, 49 L. R. A. (N. S.) 789; 8 C. J. 363. In fact such indorsement seems to be recognized as a qualified indorsement which constitutes the indorser a mere assignor of the title to the instrument. Section 5850, G. S. 1913. Such an indorsement has no tendency to relieve the indorser from his obligations arising from his separate contract of guaranty. The indorsement "without

recourse" frees the indorser from all responsibility for payment of the bill. Youngberg v. Nelson, 51 Minn. 172, 53 N. W. 629, 38 Am. St. 497; Maine T. & B. Co. v. Butler, 45 Minn. 506, 507, 48 N. W. 333, 12 L. R. A. 370. This is not an effort to contradict a written instrument by parol. Such an indorsement does not prevent the indorser from assuming liability by some other written contract of guaranty as was done in this case. The appellant argues that, since plaintiff took the notes indorsed without recourse with full knowledge as to the meaning of such indorsement, it is now concluded thereby. Plaintiff did not take these notes relying upon anything but the written contract of guaranty. It now seeks to enforce that contract. It is not trying to enforce any liability by reason of the indorsement without recourse. In taking subsequent notes plaintiff still relied on the guaranty, and the parties did not intend by the indorsements on the back of the subsequent notes to put an end to the written guaranty. The parties intended to maintain the integrity of the original guaranty and hence the authorities cited in appellant's brief do not apply.

Much has been said as to the power of the president of the bank to execute this guaranty in the absence of a resolution of authority, and that the contract was ultra vires and that the agreement was not made as required by statute. In the view of the trial court, which has our approval, these questions are not reached. The trial court found, as we have indicated, that the defendant was aware of the existence of this guaranty and that it had had and received benefits under the contract. How did it acquire this knowledge? Moyer, the president of the bank, executed the guaranty. His knowledge ordinarily is knowledge of the bank. It is, however, claimed that he was the secretary and treasurer of Moyer Manufacturing Company and a large stockholder in that corporation and was in fact representing both corporations. It is the contention that he was the sole representative of the bank in this transaction and that he was, in fact, the sole agency acting for Moyer Manufacturing Company in the same transaction. We think it may fairly be said that the defendant bank claims the president of the bank framed a letter, and procured the cashier's signature thereto, addressed to

plaintiff containing a general outline of the plan of operation, which was later carried out, and inclosed the guaranty therein. The cashier signed the letter but denies knowledge as to the contents thereof. If the president acted in behalf of both corporations as claimed, his knowledge is knowledge of defendant bank. His adverse interest under these circumstances does not relieve the bank from being charged with his knowledge. Had he not been the sole representative of the bank the rule would not apply. State Bank v. Adams, 142 Minn. 63, 170 N. W. 925. If we should conclude, because of the connection of Victor Freeberg, the cashier, with this transaction, that Mr. Moyer, the president, was not the sole representative of the bank, then the rule in the Adams case would not apply.

On November 16, 1920, a letter was written to plaintiff. It outlined the proposed plan of contemplated business relation, pursuant to negotiations had with plaintiff by Malcolm B. Moyer. It inclosed the guaranty. It was signed by Victor Freeberg, cashier, and was written on stationery of defendant. Plaintiff answered this letter by writing defendant bank (Attention Victor Freeberg, cashier), and specifying necessary details and inclosed a signature card which was later returned with the signature of five active officials including four of the five directors. The business arising out of this transaction was necessarily well-known to the persons working in the bank, but they, aside from Freeberg, might not have known of the written guaranty. We think, however, that defendant cannot escape the consequences of the acts of its cashier upon his attempted explanation to the effect that the president of the bank prepared the letter and that he, the cashier, signed it without knowing anything as to its contents. The cashier is, under such circumstances, chargeable with the same knowledge that he would have acquired had he read the letter. A corporation cannot escape liability by its executive officer saying he signed letters without reading them. The bank is chargeable, under these circumstances, with all knowledge that Freeberg would have acquired had he read this letter and given its contents the ordinary attention that its importance required. This would have led to a full knowledge of the guaranty and its contents. When a person executes a contract, the bare fact that

he did not read it or know its contents will not relieve him from it. Quimby v. Shearer, 56 Minn. 534, 58 N. W. 155. So defendant must be held to the letter signed by its cashier. Otherwise business would be on a very insecure footing.

We think the bank must be chargeable with full knowledge of the guaranty and with such knowledge it carried on the business in the belief that it was to its advantage. With this knowledge it carried on this business for several months, apparently faithfully carrying out the plans included in the arrangement between plaintiff and defendant. Having done this it is in no position to now repudiate the authority of the officer who executed the guaranty which led plaintiff into this business relation and upon which it in good faith relied when it carried out its part of the agreement. Under the circumstances, the defendant bank is estopped from questioning the validity of the contract of guaranty, 7 C. J. 539; Citizens' Bank & Trust Co. v. Thornton, 174 Fed. 752, 98 C. C. A. 478; Hawkins v. N. Y. Fourth Nat. Bank, 150 Ind. 117, 49 N. E. 957; Porter v. Farmers & M. Sav. Bank, 143 Iowa, 629, 120 N. W. 633; German Sav. Bank v. Des Moines Nat. Bank, 122 Iowa, 737, 98 N. W. 606; Davenport v. Stone, 104 Mich. 521, 62 N. W. 722, 53 Am. St. 467; First Nat. Bank v. State Bank of Northwood, 15 N. D. 594, 109 N. W. 61.

Order affirmed.