# FIRST STATE BANK OF ODESSA v. FIRST STATE BANK OF CORRELL.[1]

December 18, 1925.

No. 24,912.

**Transfer of note between banks was a sale.**

1. *Held*, under the proofs, that the transactions had between the plaintiff and defendant banks amounted to a discount and sale of the notes in question.

**Estoppel against selling bank defending on ground sale was ultra vires.**

2. Where notes given to a bank are negotiated by the cashier, under an agreement to repurchase the same upon 10 days' notice, and the bank received the full face value of such notes, and silently acquiesced in such transaction until suit was brought thereon, it will be estopped from invoking the defense of ultra vires.

**Whether renewal of note amounts to payment depends on intention.**

3. Whether the renewal of a promissory note amounts to payment of the debt is to be determined from the intention of the parties.

**Question of fact.**

4. Whether the renewal notes were taken by or at the instance of the Correll banks, for the purpose of extending the time of the payment of the indebtedness, is a question of fact to be determined from all of the surrounding circumstances of the transaction.

**Statute of frauds.**

5. The fact that the Correll banks co-operated with the plaintiff and its officials in procuring the renewal of the unpaid original notes, to its advantage, was in direct keeping with the agreement to look after and collect the notes and is not such as to bring the same within the statute of frauds.

1. See Banks and Banking, 7 C. J. p. 594, § 235 (Anno).
2. See Banks and Banking, 7 C. J. p. 539, § 142.
3. See Bills and Notes, 8 C. J. p. 571, § 793.
4. See Bills and Notes, 8 C. J. p. 432, § 636.
5. See Frauds, Statute of, 27 C. J. p. 232, § 240.

[1]Reported in 206 N. W. 459.

Action in the district court for Big Stone county upon certain notes. The case was tried before Flaherty, J., who directed a verdict in favor of plaintiff. Defendant appealed from an order granting a new trial. Affirmed.

*C. A. Fosnes* and *John C. Haave*, for appellant.

*Ray G. Farrington, Charles H. Bolsta* and *Freeman & Smith*, for respondent.

QUINN, J.

Action arising out of the delivery of certain promissory notes by the defendant to the plaintiff, under a written memorandum, in December, 1919. All three banks involved were organized under the banking laws of this state and, as such, were engaged in the general banking business in Big Stone county. The appellant, First State Bank of Correll, is the successor to the Farmers & Merchants State Bank, and subject to all the liabilities thereof. At the close of the testimony, upon motion of counsel for defendant, the trial court directed a verdict in favor of the plaintiff for the sum of $1,398.60. From an order granting plaintiff's motion for a new trial, the defendant appealed.

It is averred in the complaint, and it was contended upon the trial, that for a number of years prior to 1920 it was the custom of the Farmers & Merchants Bank, above referred to, when short for currency, to place with the plaintiff a batch of promissory notes, whereupon plaintiff would place to its credit, subject to check upon its books, an amount equal to the face of such notes; that the Farmers & Merchants Bank would indorse such notes without recourse, and look after the collection or renewal of the same as necessity might require, with the understanding that the Farmers & Merchants Bank would repurchase the same at any time, upon demand.

In December, 1919, the Odessa bank requested the Correll bank to take up all of such paper which it then had, in accordance with such custom, and in compliance therewith the Correll bank sent a draft for $5,703.40 to the plaintiff and took up all of such notes so

in the hands of the plaintiff, thereby effecting a complete cutoff, or balance, in such account. Shortly thereafter, without any special authority from the board of directors, the cashier of the Correll bank, H. H. DeWall, prepared and signed the memorandum here in question, and inclosed the same, together with the certificate and notes therein listed, in an envelope and sent the same to the plaintiff, for the purpose of obtaining further credit, which memorandum was as follows:

FARMERS & MERCHANTS STATE BANK
Correll, Minn. 12-26-1919

To First State Bank,

Odessa, Minn.

(N. P.)

(75-700)          Enclosed find for collection and credit items as listed below:

Do not protest items $10.00 or under, or any items bearing this stamp, or similar authority of a preceding endorser.

| No. | Payer | Amount |
| --- | --- | --- |
| 2619 | C. D. 1 yr. | 1800.00 |
| Demand | H. H. De Wall | 1000.00 |
| Demand | Wm. J. De Wall | 1800.00 |
| Demand | J. J. DeWall | 1500.00 |
| Demand | A. A. DeWall | 1500.00 |
| Demand | O. E. Gunner | 1207.18 |
|  | Effie Gunner | |
| Demand | Murl Hudson | 1000.00 |
| 10-1-1922 | Martin Jensen | 1050.00 |
|  | Julian Jensen | |
| 9-1-1920 | Emil Kanne | 93.00 |
| Nov. 1-1920 | Adolph Moss | 1000.00 |
|  | Mabel Moss | |
| Demand | M. H. Olson | 1000.00 |
| 10-1-1920 | Roy Wellendorf | 400.00 |

13497.18

We agree to repurchase any of these notes by Nov. 1st, 1920 or any time upon demand with 10 days' notice, together with Int. at 8% for period carried by you. Notice of due and collections to be made by us.

Farmers & Merchants State Bank of Correll.

H. H. DeWall, Cash.

The notes and certificates so listed were received by the Odessa bank on December 30, 1919, and on that day full credit in the sum of $13,497.18 was given the Correll bank therefor, which transaction, made as it was by the cashier, was recognized by the Correll bank and, on the sixth day of January, 1920, that bank made drafts and withdrew the entire account.

The transaction amounts to a sale coupled with an agreement to repurchase. The Correll bank received full consideration for the paper which it parted with. It participated in the collection and renewal of the notes as promised in the memorandum, and as had been its custom in like transactions had with the Odessa bank. If the transaction was ultra vires, then it has been ratified, and the defendant, in all equity, should be and is estopped from questioning the authority of its cashier to make the memorandum agreement referred to. Central Met. Bank v. Chippewa County State Bank, 160 Minn. 129, 199 N. W. 901.

The cashier of the Odessa bank testified, in effect, upon the trial, that all of the notes and the certificate of deposit listed in the memorandum had been collected by the Correll bank and remitted by it to the plaintiff bank, except the following notes: H. H. DeWall, $1,000; Wm. J. DeWall, $1,800; J. J. DeWall, $1,500; Martin Jensen, $1,050; and Murl Hudson, $300; the face of such notes, less payments, amounting in all to the sum of $5,150 which, with accrued interest, amounted to $8,773.22; that the Hudson note was originally $1,000, but was cut down by payments to $300; that Exhibits "C", "E" and "F" are the J. J. DeWall, H. H. DeWall and William J. DeWall notes and represent a part of the original notes which were sent by the Correll bank along with the original

memorandum agreement; that they are renewals of those notes, taken by the Correll bank, and sent by it to the Odessa bank; that the old original notes were surrendered to the Correll bank and the renewals substituted in their stead; that he had requested the Correll bank to repurchase these notes a number of times, which was refused; that he received the notes, Exhibits "C," "E" and "F", from the Correll bank when he presented the old original notes and demanded payment; that the cashier then presented these renewals and he accepted them and surrendered the old notes.

It was the contention of appellant, upon the trial, as it is upon this appeal: (1) That the cashier of the Correll bank had no authority to execute the memorandum agreement of December 26, 1919, because no resolution or action of any kind, empowering him so to do, had ever been made by the board of directors; (2) that the Correl bank never received any benefit from the proceeds of the certificate and notes listed in the memorandum and therefore is not estopped from denying the validity of that instrument; (3) that, under the memorandum agreement and the proofs in the case, appellant cannot be held liable on account of any of the notes which had been renewed, for the reason that there was no undertaking, on its part, to repurchase any renewal notes; (4) that plaintiff did not exercise the option requiring defendant to repurchase the notes within a reasonable time; (5) that it conclusively appears from the evidence that the debt, represented by the J. J. DeWall note, was paid in full.

These contentions may be disposed of in the order in which they are stated. For the reasons stated, the appellant is estopped from asserting the invalidity of the memorandum agreement. The contention that the Correll bank received no consideration moving from the transaction requires no extended consideration. It is undenied that, when the notes in question were delivered to the plaintiff bank, the Correll bank was credited with the face value thereof and that thereafter it drew drafts against the same and thereby withdrew the full amount of such credit from the credit account. These drafts appear in the record as Exhibits "H" and "I". They had passed

through the Saint Paul and Federal reserve clearing houses with nothing irregular appearing upon their face or otherwise.

Appellant urges strongly that, under the memorandum agreement, it cannot be held liable on account of any of the renewal notes, for the reason that there was no undertaking, on its part, to repurchase renewal notes. It claims that, if there was any such agreement, it would be void under the statute of frauds unless it were in writing, and that no such written contract is claimed ever to have been made. The proofs are conclusive that the Correll bank co-operated with the Odessa bank officials in procuring the renewal notes and in substituting them for the original notes mentioned in the memorandum agreement. Their acts were only in keeping with the terms of the written memorandum whereby the Correll bank was to collect the notes. It was work directly in keeping with that document. The indebtedness, covered by the old notes, was in no way changed by the giving of the renewal notes. The renewal notes were taken for the benefit of the Correll bank and not for the benefit of the plaintiff. They were, at most, but mere evidence of the original indebtedness.

Appellant's written promise was to collect the notes or to repay the money received by it and take back the notes. The transaction was not, strictly speaking, a guaranty. There are necessarily three parties to a guaranty, a creditor, a debtor and a guarantor. In the present case, there are but two parties—a buyer and a seller who agreed to repurchase the paper so transferred and pay 8 per cent interest so long as the paper was carried by the buyer. Whether the renewal of a note is payment, is to be determined from the intention of the parties. Harvey v. First Nat. Bank, 56 Neb. 320, 76 N. W. 870. If the renewal note was taken by the defendant, or at its instance or for its benefit, then it would fall within the agreement made. That is, whether the renewal note comes within the scope of the agreement to repurchase is to be determined from the proofs relative to the facts and circumstances surrounding the transaction and the intention of the parties. Where a renewal is taken by or at the instance of the guarantor of the original note, for the

purpose of extending the time of the payment of the indebtedness, he will be liable for its payment under his guaranty. Harvey v. First Nat. Bank, supra; First Nat. Bank v. Jones, 92 Wis. 36, 65 N. W. 861. It will be observed that, under the agreement in the instant case, defendant was obligated to repurchase the notes by November 1, 1920, and, at any time thereafter, upon 10 days' notice. We see no reason why the same rule should not apply as in the case of a guaranty. Whether the J. J. DeWall note had been paid, as claimed by the defendant, was a question of fact to be determined from the evidence. The order granting a new trial was right.

Affirmed.