## RALPH V. BEYL v. ARTHUR SWANSON AND ANOTHER.[1]

December 18, 1925.

No. 24,871.

**Bank liable for guaranty to good faith purchaser made by its president.**

A promissory note, secured by a real estate mortgage, was taken in the name of the bank and assigned to plaintiff's testate before maturity, for value, with a guaranty of payment indorsed. The defense to the guaranty was want of authority in the bank's officers to take and assign the note and mortgage or to guarantee payment of the note; that the instruments were made by the president of the bank for his own accommodation and did not bind the bank. It is *held* that as to plaintiff's testate, a purchaser in good faith before maturity, the evidence justified finding the transactions the bank's and the guaranty valid as to it.

See Banks and Banking, 7 C. J. p. 544, § 151.

Action in the district court for Lake of the Woods county to foreclose a mortgage. The case was tried before Watts, J., who ordered judgment in favor of plaintiff. Defendant Hawick State Bank appealed from an order denying its motion for a new trial. Affirmed.

*W. H. McDonald*, for appellant.

*Eugene G. Johnson* and *Middleton & Middleton*, for respondent.

HOLT, J.

Action to foreclose a real estate mortgage given by Arthur Swanson to the Hawick State Bank to secure the payment of a promissory note of $800, which mortgage and note were assigned to August Beyl, with a guaranty of payment indorsed on the note. Findings were made holding the bank on the guaranty, and directing a foreclosure. The bank appeals from the order denying its motion in the alternative for amended findings or a new trial.

[1] Reported in 206 N. W. 453.

The evidence disclosed that August Beyl, a man of upwards of 84 years, residing in Wisconsin, had had 10 or 12 transactions with this bank, purchasing promissory notes secured by real estate mortgages, receiving the bank's guaranty of payment indorsed on the notes. In fact, appellant offered evidence that Beyl would not accept assignments without such guaranty. The assignment of the mortgage here in question was executed by Gesell, the president, and Hall, the cashier, of the bank in August, 1918, three months after the mortgage was made. But evidently the name of the assignee was not then inserted, for not until March 18, 1919, was the guaranty placed thereon. Plaintiff, the son of August Beyl, now deceased, testified that his father's eyesight was failing so that the son had to open and read the mail and attend to the correspondence for the father; that he recalls that, when the purchase of the note and mortgage in question was negotiated, August Beyl refused to accept the same because the note was indorsed without recourse; that his father returned the instruments to the bank; and thereafter they came back to him with the words "without recourse" erased on the note and interest coupons, and with the guaranty of payment in the words now found thereon. The note was thus transferred and guaranteed to Beyl long before due, and there is not the slightest evidence that Beyl knew otherwise than that the bank, the payee named therein, was the owner and to it he paid by check the consideration for the transfer.

Gesell took the witness stand and testified that this note and mortgage, as well as the others which Beyl had bought from the bank, were his individual property; that the bank had no interest therein; that for his own convenience he took the instruments in the name of the bank, but had no authority so to do. He also denied that he had authorized the guaranty, although it was signed "Hawick State Bank, L. E. Gesell, Pres." Comparing the handwriting on the exhibits, no fault could be found with the court for concluding that Gesell, rather than the cashier, indorsed the guaranty and wrote in the name of August Beyl as the guarantee. At any rate, either the cashier or the president of the bank placed the guaranty upon the note, it is immaterial which one.

The proffered defense was that the transaction was Gesell's and not the bank's, and that Gesell and Hall had no legal authority to bind the bank. Even if the note and mortgage belonged to Gesell it should not affect the rights of August Beyl, an innocent purchaser for value, before maturity. And the evidence is not such that it would call for a finding that the bank did not receive any benefit from the transaction. Beyl paid by check made to the bank. The bank's books of account were not offered in evidence. The mortgage and note ran to the bank. The assignment was executed by the bank, Gesell and Hall both executing the acknowledgment. In that instrument the bank vouched for its right as owner to assign the mortgage and debt. The evidence also shows that the bank's business was left entirely with the cashier and president, the board of directors meeting but twice a year. Hall, the cashier, did not testify. Beyl transacted his business of buying notes and mortgages, so far as appears, entirely by correspondence with the bank. Under that situation the bank should be held estopped to deny the authority of Gesell and Hall to act for it. Auerbach v. LeSueur Mill Co. 28 Minn. 291, 9 N. W. 799, 41 Am. Rep. 285; Central Met. Bank v. Chippewa Co. State Bank, 160 Minn. 129, 199 N. W. 901. In Davenport v. Stone, 104 Mich. 521, 62 N. W. 722, 53 Am. Rep. 467, the court said: "The directors intrusted the entire management of the bank to the cashier, Mr. Bradley. Therefore, neither the bank nor its receiver can now be heard to deny the authority of the cashier to do any of those acts which it or its directors might lawfully authorize the cashier to do."

Even if this sale and guaranty of the note to a good faith purchaser was for the accommodation of Gesell, the authorities seem to hold that in a suit by such purchaser on the guaranty the bank would have no defense. Bank of Genesee v. Patchin Bank, 19 N. Y. 312; Houghton v. First Nat. Bank of Elkhorn, 26 Wis. 663, 7 Am. Rep. 107; Auten v. U. S. Nat. Bank, 174 U. S. 125, 19 Sup. Ct. 628, 43 L. ed. 920. The last case, while dealing in large transactions of banks having vast capital as compared with the bank here in question, has similar features. It was there, as here, contended that

the president who bound the bank did so for his own accommodation and lacked authority from the board of directors. As to the first point it was held that, although the president's name appeared above that of the bank which he had also indorsed, it did not necessarily appear to a good faith purchaser that it was for his accommodation, there having been many transactions of a similar nature between the two banks involved. So here between Beyl and the bank. As to the lack of authority from the board of directors, it was said that the directors "surrendered the business absolutely to the president and cashier," thereby making applicable this principle, quoted from Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. ed. 49:

"Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. * * * That which they ought by proper diligence to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business."

In this case the abstract showed that patent to the land mortgaged issued to the mortgagor and maker of the note, then two mortgages executed by him on the same date to the bank, the one securing the payment of the $800 note and the other one for $100. The many dealings of Beyl for the purchase of mortgages, and the guaranteeing the payment of the accompanying notes, were with the bank. In such dealings Beyl secured a discount of from 1 to 3 per cent. When such discount was not deducted from the check by which Beyl paid for the notes and mortgages, the bank would send its check for the amount. Since Gesell resided at Thief River Falls, it is apparent that this correspondence was between the cashier of the bank and Beyl. So that, without doubt, the cashier and the president acted in accord and with full knowledge of each other's doings in the transactions with Beyl. The learned trial court ruled

rightly in the admission of the instruments involved, and was justified by the evidence in making the findings of fact that were made.

The order is affirmed.