### FIRST NAT. BANK OF CHISHOLM v. FIRST NAT. BANK OF DELANO et al.

District Court, D. Minnesota, Fourth Division. September 21, 1928.

No. 2038.

Austin & Wangensteen, of Chisholm, Minn., for plaintiff.

S. A. Johnson, of Buffalo, Minn., for defendants.

JOHN B. SANBORN, District Judge. The amended complaint alleges that on February 9, 1924, the defendant First National Bank of Delano owned a note of Henry Frankman, payable to that bank, for $3,500, dated February 7, 1924, with interest at 8 per cent.; that it sold the note to the plaintiff and guaranteed its payment at maturity; that the note has not been paid. A copy of the note is set out in the amended complaint, which shows it to be payable to the First National Bank of Delano, and shows that it was indorsed in blank. The answer to the amended complaint denies that the defendant bank was the owner of the note on the 9th day of February, 1924, although, in the answer to the original complaint, it was admitted that the defendant bank was the owner of the note; alleges that the defendant bank had no pecuniary interest in it, and the facts tending to show that it did not have such an interest; alleges that the loan was an excessive loan, and beyond the power of the defendant bank to make, and that it was thereby barred from guaranteeing the note; admits that the note was forwarded with a letter stating, "As in the past, we guarantee the payment of this note;" alleges that this was written by the cashier of the bank, but was not authorized by the board of directors of the bank, and was done without the knowledge or authority of the bank, and that the guaranty was made in furtherance of collusion and connivance by the two banks to conceal from the national banking department the fact of an excessive and continuing liability on the part of the defendant bank to the plaintiff. The answer also admits the receipt of $3,512.90, but denies that the defendant bank retained the money, and alleges that it was paid to the State Bank of Brownton, which actually owned the note. The reply of the plaintiff puts in issue the allegations of the answer. The parties have entered into a stipulation whereby the correspondence between the two banks, which resulted in the sale by the one and the purchase by the other of the note in question, has been made a part of the pleadings for the purpose of this motion.

It is my understanding that the parties desire the court to determine whether, upon the pleadings and the correspondence—assuming the correspondence to be the only evidence of the nature and terms of the contract between the two institutions—the plaintiff is entitled to judgment. In other words, I do not understand that it is claimed by the defendants that there is any other evidence to show that this contract between these banks was for the purpose of enabling the defendant bank to conceal its true financial condition, to violate the National Banking Act, or to deceive the Comptroller of the Currency.

The first question to be determined is whether the cashier of the defendant bank had apparent authority by virtue of his office to guarantee the payment of a note owned and sold by the bank. This question appears to be answered in this circuit by the case of Farmers' & Merchants' Nat. Bank v. Smith, 77 F. 129, 135, in which it is said:

"It may be said that, so long as a national bank confines itself to the kind of business which it is authorized to transact, one who has dealings with it is entitled to presume, unless he has notice to the contrary, that its cashier is empowered to draw and certify checks and drafts, to transfer by indorsement commercial paper of all kinds which is in the bank's possession, *to guaranty the payment of notes and bills* which the bank sells or rediscounts for its own benefit, and to do many other acts, which, for present purposes, need not be specially enumerated."

The next question is whether the defendant bank is in a position to deny ownership of the note which it sold. The note was made payable to it. It was indorsed by it. The letter transmitting the note was as follows:

"Delano, Minnesota, Feby. 23, 1924.

"The First National Bank, Chisholm, Minnesota.—Gentlemen: In accordance with your letter of the 21st, we herewith hand you the Henry Frankman note in the amount of $3,500, dated February 7, 1924, and due May 7, 1924, with interest at 8 per cent. You will note that we have been carrying this paper since the 7th inst., so will ask that you include the interest due us for that time in your remittance. As in the past, we guarantee the payment of this note.

"We also inclose you our check in the amount of $832, same being in payment of the Frankman note of $800 and int., which we received from you to-day.

"Thanking you very kindly for the consideration given in this matter and trusting to receive remittance by return mail, we are

"Yours very truly,     C. J. Lohmiller,
Cashier."

In the case of Farmers' & Merchants' State Bank v. Mellum et al., 173 Minn. 325, 329, 217 N. W. 381, 382, the court said:

"Defendants claim that the original note was not owned by defendant bank. Its books do not show that it was carried as an asset. But it assumed to own it. It had possession of it. It sold it. No one else claims to have been the owner. It took plaintiff's money therefor. It has made no satisfactory explanation of its conduct indicating ownership, and we are of the opinion from the facts that the conclusion of law to the effect that it was the owner thereof at the time of sale is inevitable."

From the pleadings here, it appears that the defendant bank held itself out to be the owner of this note, and received the money therefor; that there was nothing which would have indicated to the plaintiff that the defendant bank was not the owner of the note, and therefore the defendants are now in no position to deny ownership. See, also, Central Metropolitan Bank v. Chippewa County State Bank, 160 Minn. 129, 199 N. W. 901. Therefore we have the situation of a note owned by a bank, sold to a correspondent bank, and the payment thereof guaranteed by the selling bank, through its cashier, who had apparent authority to make the guaranty.

To defeat the claim of the plaintiff, the defendant bank, through its receiver, now says that the loan in question was an excess loan; that the defendant bank had no authority to make it and no authority to guarantee it; and that the effect and purpose of the agreement between the two banks was to violate the National Banking Act. Reliance is placed upon two cases: Oakes Nat. Bank v. Farmers' State Bank, 52 N. D. 49, 201 N. W. 696, and Live Stock State Bank v. First Nat. Bank of Fairfield (D. C.) 300 F. 945. In the latter case it was held that a secret agreement of the cashier of the defendant bank, pursuant to which the plaintiff bank made a loan to a company of which the cashier was part owner, that on maturity of the company's note it could be charged to the defendant, was not binding on the defendant, the plaintiff knowing at the time of the cashier's interest in the company to which the money was going, and that the defendant could receive no actual benefit. The court, referring to the means by which the limitation against excess loans was defeated, said:

"The wholesome limitation established by the federal statutes must be circumvented, and hence the sinuous, under-cover course of procedure. Business institutions of large affairs and numerous transactions do not withhold the details thereof from their books, and commit to secret oral understandings the evidence of important rights and obligations, unless there is cogent reason for concealment. That the cashier of the plaintiff was ready to join with Horal [defendant's cashier] in evading the limitations of the law is made plain in a letter written by him to Horal on April 26, 1918, in which he suggests: "We would prefer taking from your bank your C. D. for $10,000 or $15,000, or, if you do not want it to show under 'Bills Payable,' suppose you send us for rediscount some of your sheep and cattle paper. We will take $10,000 or $15,000 of your customers' notes, which you can indorse without recourse, writing us in a separate letter that we can charge them to your account at maturity, and they need not show on your statement as bills payable or rediscounts."

It is, of course, apparent that in that case the parties were conspiring to defeat the purposes of the National Banking Laws.

In Oakes Nat. Bank v. Farmers' State Bank, supra, the holding was substantially the same as in the case just referred to. It was a case of one bank assisting another bank in concealing its true financial condition. It was held that the contract was illegal, the parties were in pari delicto, and that the court would leave them where they were. The court said:

"It is an action for money paid in accordance with an agreement entered into for the purpose of enabling the defendant to violate the law and conceal that violation. The plaintiff cannot recover."

Here the first letter which opened negotiations with reference to the $3,500 note was one of February 9, 1924, to the First National Bank of Chisholm, Minn. In this letter, Mr. Lohmiller, the cashier of the defendant bank, asked if the plaintiff would carry a $3,500 note of Mr. Frankman, stating that Mr. Frankman had negotiated a $6,000 real estate loan through Mr. Dodge, "of which we will carry $2,500, in addition to the $3,500 mentioned above." The following postscript appears: "We cannot carry the whole loan, as it would be an overloan with us." On February 14th, Mr. Lohmiller again wrote, asking for a reply to his letter of the 9th. On February 18th, Mr. Train, the cashier of the plaintiff, replied that they had not received a financial statement of Mr. Frankman, and on February 20th Mr. Lohmiller wrote, submitting a financial statement, and in the course of his letter stated, "As we stated in our former letter, it would make him

excessive with us, if we had to carry it here." On February 21st, Mr. Train replied that they would take the $3,500 note and carry it for 90 days, with the understanding that payment would be guaranteed. On February 23d, Mr. Lohmiller wrote, inclosing the note and calling attention to the fact that it had been carried since February 7th. On February 25th, Mr. Train remitted for the note.

There is nothing in any of the correspondence which indicates any purpose on the part of the plaintiff to assist the defendant bank in covering up its financial condition. It is possible that Mr. Train may have suspected that Mr. Lohmiller, by indorsing this note without recourse and guaranteeing it in his letter, intended to conceal the fact that the loan had been guaranteed; but the letters themselves constitute no evidence that he did know such a thing, or that he was doing anything more than purchasing a loan which was in excess of the amount which the Delano bank was entitled to carry for its customer, Mr. Frankman. Mr. Train undoubtedly knew that whether the loan was an excessive loan or not did not affect its validity. Gold-Mining Co. v. National Bank, 96 U. S. 640, 24 L. Ed. 648; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Thompson v. Saint Nicholas National Bank, 146 U. S. 240, 13 S. Ct. 66, 36 L. Ed. 956; Hanover Nat. Bank v. First Nat. Bank (C. C. A.) 109 F. 421.

It appears, therefore, that the plaintiff purchased a note which was owned by the defendant bank and guaranteed by it, for which the plaintiff paid full value and which was a valid negotiable instrument. It has not been paid, and I am unable to see that the defendants have stated any meritorious defense in their answer.

The motion of the plaintiff is granted, and judgment may be entered in its favor.