# FEDERAL LAND BANK OF ST. PAUL v. CROOKSTON TRUST COMPANY AND OTHERS.[1]

May 9, 1930.

No. 27,746.

[1]Reported in 230 N. W. 797.

 ██

*Cobb, Hoke, Benson, Krause & Faegre, L. M. Staples* and *Paul Christopherson,* for appellant.

*W. E. Rowe,* for respondent trust company.

WILSON, C. J.

Plaintiff appealed from a judgment dismissing its action against defendant Crookston Trust Company herein mentioned as defendant. It recovered judgment as against the other defendants.

Defendant is a trust company organized in 1916 and existing under the laws of Minnesota for the sole purpose of doing business at Crookston, Minnesota, as a trust company. It was created under 2 Mason, 1927, §§ 7726 and 7728-7744. In July, 1918, it became plaintiff's agent under the federal farm loan act. Plaintiff made a farm loan through said agent to defendant Lundberg. Defendant guaranteed the loan. Plaintiff sued upon the guaranty, which defendant pleaded was ultra vires.

On December 15, 1917, defendant made application for an agency under the federal farm loan act, which became a law July 17, 1916. The application was approved by plaintiff and the federal farm loan board. A formal agency contract was made on July 2, 1918, and defendant therein agreed to guarantee all loans. Lundberg's application to defendant for a farm loan from plaintiff in the sum of $10,000 was approved, and on April 23, 1919, he and his wife executed to plaintiff their note for that amount payable in 68 semi-annual payments of $325 each. Defendant guaranteed the note, which was secured by mortgage on a 360-acre farm. The title having been found satisfactory, the mortgage was recorded immediately after it and the note were delivered to defendant.

The farm was subject to a mortgage to Joseph Lariviere amounting with interest to $9,500. On the day plaintiff's mortgage was recorded defendant temporarily advanced that amount to pay Lari-

viere. Defendant's president testified the money was advanced for plaintiff. Lundberg signed and delivered a written order directing plaintiff to pay the $10,000, less the amount required for the purchase of stock in the Federal Land Bank National Farm Loan Association and expenses, to defendant, "whom I appoint my agent, to receive for me said sum." The net amount was $9,400, and plaintiff paid this to defendant as agent of Lundberg, and by his authority defendant applied the money in payment of the money advanced as aforesaid.

On September 2, 1922, defendant General Mortgage Securities Corporation acquired some interest in the farm, and it gave plaintiff a writing wherein it assumed the payment of plaintiff's mortgage.

This action was brought to recover certain mortgage payments which were in default, defendant's alleged liability resting on the guaranty.

The court found as a fact that by virtue of the laws of this state defendant was without authority to guarantee the note and mortgage and that defendant's efforts so to do were ultra vires; that said defendant conducts an extensive trust business, receiving, having and holding in trust for others, on the faith and credit of its capital and surplus and on the faith and credit of the law, large deposits of trust funds and trust estates, including a department of savings.

While defendant so acted as plaintiff's agent it negotiated and in form guaranteed loans made by plaintiff aggregating approximately $580,000. It realized therefrom about $30,000 income in the way of authorized commissions.

The federal farm loan act provides, 12 USCA, § 807:

"Any agent negotiating any such loan shall indorse the same and become liable for the payment thereof, and for any default by the mortgagor, on the same terms and under the same penalties as if the loan had been originally made by said agent as principal and sold by said agent to said land bank, but the aggregate of the unpaid principal of mortgage loans received from any such agent shall not exceed ten times its capital and surplus."

■ The foregoing statutory provision doubtless prompted the insertion of the guaranty provision in the agency contract. The act, § 803, provides that no agent other than a duly incorporated bank, trust company, mortgage company or savings institution, chartered by the state in which it has its principal place of business, shall be employed.

It is the declared law in this state that guaranties of promissory notes by such corporations wherein they have no beneficial interest are ultra vires. Farmers & M. Sav. Bank v. Crookston State Bank, 169 Minn. 249, 210 N. W. 998; Farmers & M. State Bank v. Mellum, 173 Minn. 325, 217 N. W. 381. See also In re Bankers Tr. Co. (D. C.) 27 F. (2d) 912; Ward v. Joslin, 186 U. S. 142, 22 S. Ct. 807, 46 L. ed. 1093. This is based upon our statutes, the authority and power invested in such corporations, and upon public policy. It is the intention of the state to control such corporations in so far as reasonably possible, especially for the protection of their depositors and stockholders and generally for the public welfare. The public is vitally concerned.

Such financial state institutions may guarantee paper which they own and sell and which is essential to the transaction of their usual business. Hence, plaintiff asserts that defendant had a beneficial interest in this transaction because it received the proceeds of the loan as indicated to reimburse it for money advanced to pay the Lariviere mortgage. But plaintiff is met with the court's finding, sustained by the evidence, that the advancement was made for plaintiff. We are unable to see how this particular guaranty may come within the general authority as a part of the purposes of defendant's creation. We think it does not.

So we come directly to the inquiry as to whether the congress has intentionally undertaken to bestow upon state institutions added authority qualifying them to act as plaintiff's agent under the federal farm loan act. This would mean authorizing them to do that which under the law of their creation and existence was theretofore ultra vires. When congress enacted the federal farm loan act it was in a field wherein it presumably had jurisdiction and constitutional authority. The power to create state banks and trust

companies has not been delegated by the United States constitution and hence under the terms of the tenth amendment thereto is reserved to the states. This state has enacted laws under which such institutions have been created and are existing. They have been surrounded by protective measures and restrictions and subjected to state supervision. As hereinbefore stated, such institutions are not authorized to guarantee notes in which they have no interest. Our state laws intended to protect the depositors and stockholders from the peril of large contingent liabilities. The instant case is a concrete example of the danger which the state has jealously sought to avoid. Defendant in form has subjected itself to a liability of $580,000. It has a capital of only $50,000 and a surplus of $4,000. It holds deposits of nearly $100,000 and some trust funds. No one can call it safe and conservative banking for a trust company with such resources to incur such liability wholly uncommensurable with the incidental earnings. It also involves a risk never contemplated in defendant's creation. It jeopardizes the security and safety of the depositors whose welfare, from the state viewpoint, is paramount. While it may not hazard the trust funds, it does very materially jeopardize the power of defendant to execute the trusts. If it may be said that the federal farm loan act has increased the powers of our state institutions and made it possible for them to create such unlimited liabilities, it must be said that it is inimical to the best interests of the state and contrary to our laws and established policy. The regulation of state institutions is a right of sovereignty relative to which the congress of the United States can have no concern. It seems strange that congress designated only state institutions as eligible to act as agents and did not include national banks. We are reluctant to adopt the argument that congress was intentionally protecting the national banks and their patrons and throwing the burden arising out of periodical financial depressions upon their state competitors. If such is the result we attribute it to inadvertence. We likewise doubt the soundness of the economic policy injected into the federal farm loan act requiring every community to stand any loss that results from any loan made

therein. The responsibility should rest upon those who control and not those who are innocent and free from fault.

If it was the intention of congress to broaden and enlarge the power of such state institutions, we think it a futile and unconstitutional effort. Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. ed. 834, 11 A. L. R. 1145; Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724; Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, Ann. Cas. 1912A, 487; Dolley v. Abilene Nat. Bank (C. C. A.) 179, 461, 32 L.R.A.(N.S.) 1065; Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. ed. 822; First Nat. Bank v. California, 262 U. S. 366, 43 S. Ct. 602, 67 L. ed. 1030; People ex rel. First Nat. Bank v. Brady, 271 Ill. 100, 110 N. E. 864, Ann. Cas. 1917C, 1093.

Indeed, defendant's articles of incorporation, together with existing laws at the time of incorporating, constitute the contract entered into by the stockholders of defendant corporation and establish their rights, obligations and liabilities and the corporation's powers, express and incidental. West Duluth Land Co. v. N. W. Textile Co. 176 Minn. 588, 224 N. W. 245; Jones v. Missouri E. E. Co. (C. C. A.) 144 F. 765; Cumberland T. & T. Co. v. City of Evansville (C. C.) 127 F. 187; Id. (C. C. A.) 143 F. 238; Wilcox v. Jackson, 13 Pet. 498, 10 L. ed. 264; Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. ed. 629. It seems to us that the powers of defendant rested exclusively with the state. The question is exclusively for the state. The subject of domestic relations of husband and wife belongs to the state, not the federal government. Ohio ex rel. Popovici v. Agler, 280 U. S. 379, 50 S. Ct. 154, 74 L. ed. 225. Neither government must interfere with the other. Each in its own sphere must be left free to its own duties and responsibilities. Metcalf v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. ed. 384.

The federal farm loan act provides that loans are to be made through farm loan associations, but where there are no such associations loans may be made through agents. It seems to us that congress never intended to enlarge upon the corporate power of such

domestic agencies, but that it was left to the state law in the respective states to determine whether the permitted class of agents were within or without their corporate power to enter into such agency contracts and make the guaranty required under the federal law. Thus regarded, the federal farm loan act imposed upon the corporations in the permitted class for agents in this state a liability for which there existed no capacity to contract. Upon this theory the provision for the guaranty is ineffectual and without operation. Plaintiff's representatives have entered into an agency contract with one which under its articles of incorporation and the laws of the state it could not make. The guaranty on the part of defendant was ultra vires.

■ Plaintiff claims that defendant is estopped to assert the defense of ultra vires. Doubtless there are many cases where a corporation is estopped from raising such a defense. But in all such cases the corporation has participated in the benefits. Central Met. Bank v. Chippewa County State Bank, 160 Minn. 129, 199 N. W. 901; Beyl v. Swanson, 165 Minn. 278, 206 N. W. 453; First State Bank v. First State Bank, 165 Minn. 285, 206 N. W. 459; Peoples Bank v. Manufacturers Nat. Bank, 101 U. S. 181, 25 L. ed. 907; Farmers & M. Sav. Bank v. Crookston State Bank, 169 Minn. 249, 210 N. W. 998; Greene v. First Nat. Bank, 172 Minn. 310, 215 N. W. 213, 60 A. L. R. 814; Appleton v. Citizens Central Nat. Bank, 190 N. Y. 417, 83 N. E. 470, 32 L.R.A.(N.S.) 543; Ellis v. Citizens Nat. Bank, 25 N. M. 319, 183 P. 34, 6 A. L. R. 166; Farmers & M. Bank v. Bluefield Nat. Bank (C. C. A.) 11 F. (2d) 83. But as hereinbefore indicated, we hold that defendant did not participate in the benefits of this transaction and hence the doctrine of estoppel is without application. Farmers & M. Sav. Bank v. Crookston State Bank, 169 Minn. 249, 210 N. W. 998.

Affirmed.